# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Parentage of | No. 53532-7-II |
| L.J.M. | |
| | PUBLISHED OPINION |

MAXA, J. – Philip Bergsieker appeals the trial court's order dismissing his de facto parentage petition regarding his stepson LJM, which was filed under RCW 26.26A.440. Bergsieker's wife and Nathan McAllister are LJM's genetic parents.

RCW 26.26A.440, effective January 1, 2019, provides a means by which a person can petition for de facto parentage status regarding a child despite not being the child's genetic parent. To establish standing to maintain a de facto parentage proceeding, a petitioner must allege facts sufficient to satisfy seven requirements. RCW 26.26A.440(3), (4). The trial court determined that Bergsieker failed to allege sufficient facts to satisfy two of the seven statutory elements.

We conclude that the trial court erred in ruling that (1) Bergsieker did not allege facts sufficient to satisfy the requirement that he had undertaken "permanent" responsibilities as LJM's parent because McAllister was alive, (2) Bergsieker did not allege facts sufficient to satisfy the requirement that he had held out LJM as his child because LJM had a different last name and members of their community are aware of Bergsieker's status as LJM's stepfather, and (3) whether LJM's mother fostered or supported the relationship between Bergsieker and LJM at

the expense of McAllister was material to the court's analysis. Accordingly, we reverse the trial court's order dismissing Bergsieker's de facto parentage petition based on standing and remand for the trial court to determine whether Bergsieker actually can demonstrate the statutory elements by a preponderance of the evidence.

FACTS

Bergsieker and Adrianne Bergsieker, LJM's mother, are married and have lived together since early 2015. LJM was born in May 2010. Bergsieker has been a part of LJM's life since July 2014. Bergsieker and Adrianne[1] also have another daughter who was two years old at the time of the petition.

McAllister is LJM's genetic father. Before the petition was filed, McAllister had no physical custody, legal custody, or court-ordered visitation with LJM. He was incarcerated when the petition was filed.

In March 2019, Bergsieker filed a petition for de facto parentage under RCW 26.26A.440. Adrianne joined the petition. The petition alleged detailed facts supporting each of the elements of RCW 26.26A.440(4). The petition also stated Bergsieker's reason for wanting to become LJM's de facto parent:

> The petitioner requests that the court make him a third legal parent for [LJM] because the current situation, in which there is no legal connection between [LJM] and his primary father figure, is detrimental to [LJM]. If [LJM's] mother should die or become unable to care for him, the petitioner would have no established legal status to support maintaining continuity in [LJM's] home and family environment. If the petitioner should die or become disabled, [LJM] would not be eligible for any governmental survivor benefits as his child. Although the petitioner is in an everyday parental role, he does not have parental authority to make medical or educational decisions for [LJM]. In these ways and others, failure to recognize the petitioner as [LJM's] legal parent is detrimental to [LJM].

---

[1] We refer to Adrianne Bergsieker by her first name to distinguish her from Bergsieker. No disrespect is intended.

Clerk's Papers (CP) at 21.

McAllister submitted a one-page response letter to the court to express his opposition to the petition.

The trial court reviewed Bergsieker's petition for de facto parentage and McAllister's response. The court entered an order dismissing the petition, finding that Bergsieker had not alleged sufficient facts to meet two of the de facto parentage requirements.

The court entered the following findings regarding the statutory requirements set forth in RCW 26.26A.440(4)(c), (d) and (f):

> (c) The individual undertook full and permanent responsibilities of a parent of the child without expectation of financial compensation
>
> The Court finds the petitioner has undertaken the responsibilities of parenting without expectation of financial compensation since 2014. However, *there could be no expectation of permanency on his part as the child's biological father is living.*
>
> The Court finds the petitioner <u>has not</u> alleged sufficient facts to meet this requirement.
>
> (d) The individual held out the child as the individual's child
>
> The holding out of a child as one's own, is the critical, primary difference between pre-2019 Washington State case law concerning de facto parentage and the newly enacted RCW 26.26A.[440] (effective January 1, 2019). It is a legal requirement that cannot be waived or minimalized.
>
> The petitioner alleges he has satisfied this requirement because school staff, medical providers, friends and their community look to he [sic] and his wife for parenting decisions concerning the child and have done so since 2014, and the child calls him "Dad." However, *the child uses a different last name and school staff, medical providers, friends and their community are all aware of petitioner's role as the child's stepfather. The performance of parenting functions by a stepparent does not satisfy the stringent test of holding a child out as one's own.*
>
> The Court finds the petitioner <u>has not</u> alleged sufficient facts to meet this requirement.
> . . . .

3

(f) Another parent of the child fostered or supported the bonded and dependent relationship required under e) of this subsection[.] . . .

Although the Court finds the petitioner has alleged sufficient facts to meet this requirement, petitioner's wife, the child's biological mother, *fostered or supported the bonded and dependent relationship with the child at the expense of the child's biological Father.*

CP at 30-31 (underlining in original, emphasis added).

The trial court concluded that Bergsieker had alleged sufficient facts to satisfy the remaining four requirements of RCW 26.26A.440(4).

Bergsieker appeals the trial court's order dismissing his petition for de facto parentage.

ANALYSIS

A.      UPDATED WASHINGTON UNIFORM PARENTAGE ACT

The Supreme Court established a common law de facto parentage doctrine in *In re Parentage of L.B.*, 155 Wn.2d 679, 122 P.3d 161 (2005). The court noted the lack of an available statutory remedy for persons seeking de facto parentage status under the former version of the Washington Uniform Parentage Act (WUPA), former chapter 26.26 RCW. *L.B.*, 155 Wn.2d at 707.

In 2018, the Washington legislature repealed former chapter 26.26 RCW, and enacted an updated version of WUPA, chapter 26.26A RCW. LAWS OF 2018, ch. 6 § 509. Chapter 26.26A RCW went into effect on January 1, 2019. RCW 26.26A.903. The updated WUPA was based on the 2017 version of the Uniform Parentage Act (UPA). *In re Parentage of J.D.W.*, 14 Wn. App. 2d 388, 397 n.3, 471 P.3d 228 (2020).

The updated WUPA included a section providing a procedure for establishing de facto parentage, RCW 26.26A.440. This section was based on section 609 of the UPA. *J.D.W.*, 14 Wn. App. 2d at 398. RCW 26.26A.440 "provides a statutory path to legal parentage for de facto

parents, who, loosely speaking, are adults who, with the consent and encouragement of a legal parent, have formed a strong parent-child relationship with a child." *J.D.W.*, 14 Wn. App. 2d at 398.

RCW 26.26A.440 outlines the process to petition for de facto parentage. The trial court initially must determine whether the petitioner has standing. RCW 26.26A.440(3). RCW 26.26A.440(3) states, "The following rules govern standing of an individual who claims to be a de facto parent of a child to maintain a proceeding under this section." The petitioner "must file an initial verified pleading alleging specific facts that support the claim to parentage of the child." RCW 26.26A.440(3)(a). Then, an adverse party may file a verified responsive pleading. RCW 26.26A.440(3)(b).

If these pleadings raise "disputed facts material to the issue of standing," the trial court must hold an expedited hearing to resolve the disputed facts. RCW 26.26A.440(3)(c). Otherwise, "the court shall determine, based on the pleadings under (a) and (b) of this subsection, whether the individual has alleged facts sufficient to satisfy by a preponderance of the evidence the requirements of subsection (4)(a) through (g) of this section." RCW 26.26A.440(3)(c).

RCW 26.26A.440(4) states the seven statutory requirements for de facto parentage referenced in RCW 26.26A.440(3)(c):

> (a) The individual resided with the child as a regular member of the child's household for a significant period;
> (b) The individual engaged in consistent caretaking of the child;
> (c) The individual undertook full and permanent responsibilities of a parent of the child without expectation of financial compensation;
> (d) The individual held out the child as the individual's child;
> (e) The individual established a bonded and dependent relationship with the child which is parental in nature;
> (f) Another parent of the child fostered or supported the bonded and dependent relationship required under (e) of this subsection; and

(g) Continuing the relationship between the individual and the child is in the best interest of the child.

If the court finds that the petitioner has alleged sufficient facts which, if proved, would satisfy these statutory requirements, the petitioner has standing to maintain a de facto parentage proceeding. RCW 26.26A.440(3)(c).[2]

If the trial court concludes that standing has been established, the final step is the actual adjudication of the de facto parentage petition. RCW 26.26A.440(4) states: "In a proceeding to adjudicate parentage of an individual who claims to be a de facto parent of the child, the court shall adjudicate the individual who claims to be a de facto parent to be a parent of the child if the individual *demonstrates* by a preponderance of the evidence" the seven statutory requirements. (Emphasis added.)

Significantly, whether a petitioner is entitled to a full adjudication proceeding "is a different question than whether the petitioner should *ultimately* be adjudicated a de facto parent." *J.D.W.*, 14 Wn. App. 2d at 423. To establish standing, a petitioner must only *allege* sufficient facts to satisfy the statutory requirement. To prevail on the petition, the petitioner must *demonstrate* in a subsequent proceeding that the statutory requirements have been proved.

B.      SUFFICIENCY OF FACTS SATISFYING RCW 26.26A.440(4) REQUIREMENTS

Bergsieker argues that the trial court erred in concluding that he had not alleged facts sufficient to satisfy the requirements in RCW 26.26A.440(4)(c) and (d) and in qualifying its

---

[2] Division One of this court in *J.D.W.* stated that standing exists when (1) the petitioner "unequivocally parented the child as part of the child's family unit," and (2) "a legal parent consented to and fostered a parent-child relationship between the petitioner and the child." 14 Wn. App. 2d at 409. We disagree. RCW 26.26A.440(3) expressly states that "[t]he following rules govern standing." Therefore, standing exists when the petitioner alleges facts sufficient to satisfy all seven statutory elements as required in RCW 26.26A.440(3)(c).

conclusion that he had alleged sufficient facts to satisfy the requirement in RCW 26.26A.440(4)(f). We agree.

### 1. Standard of Review

This case involves the trial court's interpretation of three subsections of RCW 26.26A.440. We review questions of statutory interpretation de novo. *J.D.W.*, 14 Wn. App. 2d at 396. The primary goal of statutory interpretation is to determine and give effect to the legislature's intent. *Id.* at 396-97. This requires looking at the statute's plain language, the statute's context, and the statutory scheme as a whole. *Id.* at 397. If the plain meaning of the statute is unambiguous, we apply that meaning. *Id.*

If the statute is ambiguous, then the court may look to legislative history, common law precedent, or canons of construction to clarify the legislature's intent. *Id.* And because the updated WUPA was based on the UPA, we may consider the UPA's official comments to construe the statute even if it is not ambiguous. *See id.*

This case also involves the trial court's sufficiency of facts determination based on the pleadings. RCW 26.26A.440(3) makes it clear that to establish standing, the petitioner must only *allege* facts sufficient to satisfy the statutory requirements. Therefore, unless there are disputed facts material to the issue of standing, whether a petitioner has presented sufficient facts to satisfy the requirements of RCW 26.26A.440(4) does not require the trial court to weigh any evidence. *J.D.W.*, 14 Wn. App. 2d at 417-18. Instead, the trial court generally must assume the truth of the petitioner's allegations in making the sufficiency of facts determination. As a result, we review de novo the trial court's determination of sufficiency of facts regarding the statutory requirements. *Id.*

2.      Permanent Responsibilities of a Parent

RCW 26.26A.440(4)(c) requires that the petitioner "undertook full and permanent responsibilities of a parent of the child without expectation of financial compensation." Bergsieker argues that the trial court erred in concluding that he did not allege facts sufficient to satisfy this requirement.  We agree.

a.      Effect of Living Genetic Parent

In concluding that Bergsieker did not satisfy the "permanent responsibilities of a parent" requirement, the trial court stated, "The Court finds the petitioner has undertaken the responsibilities of parenting without expectation of financial compensation since 2014. However, *there could be no expectation of permanency on his part as the child's biological father is living*."  CP at 30 (emphasis added).  In other words, the court essentially concluded that a petitioner could not satisfy this requirement if the child also had two living genetic[3] parents.

But RCW 26.26A.440(4)(c) does not state that the petitioner must have *exclusive* responsibilities of a parent.  That provision does not reference the parenting responsibilities of any other person.  The requirement is that the petitioner's parental responsibilities be full and *permanent*.  Whether the petitioner has undertaken permanent parental responsibilities does not depend on whether the child's genetic parent also may be in a position to undertake the same responsibilities.  More than one person can have permanent responsibilities of a parent.

In addition, the trial court's ruling would preclude a child from having more than two legal parents.  But the legislature dispelled the notion that a child can have only two parents when it enacted the updated WUPA.  RCW 26.26A.460(3) states, "The court may adjudicate a child to have more than two parents under this chapter if the court finds that failure to recognize

_____

[3] The WUPA refers to a "genetic" parent rather than a "biological" parent.  RCW 26.26A.010(3).

more than two parents would be detrimental to the child." This section means that the court can determine that a person is a de facto parent even if a child already has two genetic parents, as long as it is in the child's best interests – which, under RCW 26.26A.440(4)(g), is the final requirement for de facto parentage.

Finally, allowing a person to obtain de facto parentage status even though the child has two other parents is consistent with the common law. In *In re Parentage of J.B.R.*, the court expressly held that the fact that the child had two genetic parents did not prohibit a person from petitioning for de facto parentage. 184 Wn. App. 203, 212, 336 P.3d 648 (2014). The court noted that in *L.B.*, the case in which the Supreme Court adopted the de facto parentage doctrine, the child also had two living genetic parents. *Id.* (citing *L.B.*, 155 Wn.2d at 684-85).

McAllister argues that Bergsieker has no expectation of permanency because LJM already has two parents and does not need a third. But as noted above, McAllister's argument is inconsistent with the statutory language, RCW 26.26A.460(3), and the common law.

We conclude that the fact that a child has two living genetic parents is not a barrier to finding that a petitioner has satisfied the "permanent responsibilities of a parent" requirement of RCW 26.26A.440(4)(c). The trial court erred in ruling otherwise.

b.    Sufficiency of Facts

Bergsieker stated in his petition that he has "assumed a father role for [LJM] from a financial and support perspective." CP at 17. LJM has full health insurance through Bergsieker's employer and is a partial beneficiary on Bergsieker's life insurance and retirement. Bergsieker maintains a savings account for LJM and provides him with an allowance for chores he performs around the house. Bergsieker has coached LJM's baseball team for five years and his football team for four years, and he has paid all related costs. He regularly attends LJM's

parent teacher conferences and participates in fundraisers and art programs. And Bergsieker has never received any compensation for parenting LJM.

Bergsieker's petition clearly alleges that he has undertaken "full" parental responsibilities. Regarding "permanent" responsibilities, Bergsieker alleged that he has lived in the same household as LJM for over four years. Further, Bergsieker is married to LJM's mother and therefore is LJM's stepfather. Bergsieker's stepfather status suggests that his parental responsibilities are permanent, rather than temporary or transitory.

We conclude, on de novo review, that Bergsieker alleged facts sufficient to satisfy the requirement in RCW 26.26A.440(4)(c) that he undertook full and permanent responsibilities of a parent of LJM without expectation of financial compensation.

### 3. Holding Out the Child as the Petitioner's Child

RCW 26.26A.440(4)(d) requires that the petitioner "held out the child as the individual's child." Bergsieker argues that the trial court erred in concluding that he did not allege facts sufficient to satisfy this requirement. We agree.

#### a. Meaning of "Holding Out"

In concluding that Bergsieker did not satisfy the "holding out" requirement, the trial court stated,

> The petitioner alleges he has satisfied this requirement because school staff, medical providers, friends and their community look to he [sic] and his wife for parenting decisions concerning the child and have done so since 2014, and the child calls him "Dad." *However, the child uses a different last name and school staff, medical providers, friends and their community are all aware of petitioner's role as the child's stepfather.* The performance of parenting functions by a stepparent does not satisfy the stringent test of holding a child out as one's own.

CP at 30 (emphasis added). In other words, the court essentially concluded that a stepparent could not satisfy this requirement if others knew that he or she was a stepparent.

10

But RCW 26.26A.440(4)(d) does not state that the petitioner must hold out the child as his or her "genetic" child. The statute refers to "child." That generic term can refer to a genetic child, but it also can refer to a stepchild. *See* RCW 4.20.020 (expressly including "stepchildren" in the term "children" for the purpose of determining wrongful death beneficiaries).

In addition, the trial court's ruling would preclude almost all stepparents from attaining de facto parent status unless the stepparent falsely claimed that he or she was the biological parent. Such a result would be inconsistent with the purpose of RCW 26.26A.440. According to the comment to section 609 of the UPA,

> This provision ensures that individuals who form strong parent-child bonds with children with the consent and encouragement of the child's legal parent are not excluded from a determination of parentage *simply because they entered the child's life sometime after the child's birth*.

(Emphasis added.) Stepparents most often enter a child's life sometime after the child's birth.

Finally, there is no indication that the legislature intended this requirement to automatically exclude stepparents from de facto parentage consideration. If the legislature had intended to exclude stepparents, it certainly could have done so using express language.

McAllister argues that the role of a stepparent is not a parental role, but is based solely on marriage to one of the child's parents. But as noted above, McAllister's argument is inconsistent with the language and purpose of RCW 26.26A.440.

We conclude that the "holding out" requirement of RCW 26.26A.440(4)(d) can be satisfied even if it is known that the petitioner is the child's stepparent. The trial court erred in ruling otherwise.

        b.    Sufficiency of Facts

The question under RCW 26.26A.440(4)(d) is whether the petitioner holds out the child as his own child. Bergsieker stated in his petition that he holds out LJM as his son and LJM

11

refers to him as his father to others. LJM refers to Bergsieker as his dad when he is at school, when he writes notes to his parents, when he is in the presence of his friends, and with family in public settings. Bergsieker stated, "There isn't an aspect of his life or my life that I refer to him as anything other than my son and I love him as much as my 2 year old biological daughter." CP at 17. In addition, the petition alleged that LJM has expressed an interest in changing his last name to Bergsieker so everyone in the family has the same last name.

We conclude, on de novo review, that Bergsieker alleged facts sufficient to satisfy the requirement in RCW 26.26A.440(4)(d) that he held out LJM as his own child.

4.  Support at the Expense of the Other Genetic Parent

RCW 26.26A.440(4)(f) requires that "[a]nother parent of the child fostered or supported the bonded and dependent relationship." Bergsieker argues that the trial court erred because even though it concluded that he had alleged facts sufficient to satisfy this requirement, the court suggested that whether the support came at the expense of LJM's genetic father was relevant to the court's analysis. We agree.

In concluding that Bergsieker did satisfy the "parental support" requirement, the trial court added that Adrienne fostered or supported Bergsieker's relationship with LJM "at the expense of the child's biological Father." CP at 31. In other words, the court essentially suggested that it is relevant under RCW 26.26A.440(4)(f) whether the petitioner's spouse did not support a relationship between the child and the other genetic parent.

The trial court apparently was concerned that Adrienne may have intentionally thwarted McAllister's ability to have a meaningful relationship with LJM in order to strengthen the bonded relationship between Bergsieker and LJM. But the "parental support" requirement has nothing to do with the child's relationship with his other genetic parent. In fact, RCW

26.26A.440(4)(f) does not reference the child's other genetic parent. The only requirement is that one parent – "[a]nother parent" – support the *petitioner's* relationship with the child. RCW 26.26A.440(4)(f).[4]

The language of RCW 26.26A.440(4)(f) does not suggest that it is relevant whether or not the petitioner's spouse has supported or thwarted the child's relationship with the other genetic parent. The focus is solely on the petitioner and the supporting parent.

We conclude that whether one parent's support of the petitioner's relationship with the child comes at the expense of the other genetic parent is not relevant to the "parental support" requirement under RCW 26.26A.440(4)(f). The trial court erred in suggesting otherwise.

### b. Sufficiency of Facts

The trial court concluded that Bergsieker had alleged facts sufficient to satisfy the "parental support" requirement of RCW 26.26A.440(4)(f). Therefore, we need not address this issue.

### 5. Remand to Trial Court

If the petition alleges sufficient facts to satisfy the seven requirements of RCW 26.26A.440(4), the petitioner has standing to pursue an adjudication of de facto parentage. The petitioner then must demonstrate by a preponderance of the evidence those statutory requirements in a subsequent proceeding. RCW 26.26A.440(4).

The trial court ruled that Bergsieker alleged facts sufficient to satisfy five of the seven statutory requirements. We have concluded on de novo review that Bergsieker alleged facts

---

[4] The court in *J.B.R.* analyzed under the common law whether both biological parents fostered and supported the petitioner's relationship with the child. 184 Wn. App. at 213. But RCW 26.26A.440(4)(f) clearly refers to "[a]nother parent," not both parents.

sufficient to satisfy the other two requirements. Therefore, Bergsieker has standing and the trial court erred in dismissing his petition. Whether Bergsieker should be adjudicated to be a de facto parent must be determined in a subsequent proceeding.

CONCLUSION

We reverse the trial court's order dismissing Bergsieker's de facto parentage petition and remand for a full adjudication of the petition.

_____
MAXA, P.J.

We concur:

_____
MELNICK, J.

_____
CRUSER, J.