IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Custody of | ) | |
| | ) | No. 37108-5-III |
| SA-M, | ) | |
| | ) | |
| | ) | PUBLISHED OPINION |

STAAB, J. — In 2016, Karina Morales-Rodriguez was murdered at her work. At the time of her death, Ms. Morales-Rodriguez was living with and engaged to the petitioner, Gabriel Pinon. Their blended family included SA-M, Ms. Morales-Rodriguez's five-year-old daughter from her prior relationship with the respondent, Jose Luis Alvarez. Shortly after Ms. Morales-Rodriguez was killed, Mr. Pinon filed a petition for custody of SA-M. Mr. Alvarez disputed this petition and sought custody as well. In 2019, Mr. Pinon amended his petition for custody to include a claim under the newly enacted de facto parenting statute, RCW 26.26A.440.

This case provides an opportunity to interpret and apply RCW 26.26A.440. We conclude that the trial court properly focused on SA-M's relationship with Mr. Pinon in finding that Mr. Pinon was SA-M's de facto parent. Under the statute, the child's best interest in continuing the relationship is now a primary factor in determining whether a de facto parentage exists. If custody is an issue, the court must then make a separate

determination of the child's best interest for purposes of custody and a scheduling order.
The two interests are not necessarily the same. In this case, substantial evidence supports
the trial court's finding that it is in SA-M's best interest for the de facto parent to retain
primary custody while limiting Mr. Alvarez's residential time with his daughter. We
affirm.

## FACTS

### BACKGROUND

SA-M was born in 2010 to Karina Morales-Rodriguez and Jose Luis Alvarez. Ms.
Morales and Mr. Alvarez ended their relationship at some point in early 2012, and Ms.
Morales began living with Gabriel Pinon in April 2012. At the time, SA-M was 18
months old. Shortly thereafter, Mr. Alvarez moved to Oklahoma.

For the next four years, Ms. Morales and Mr. Pinon continued to live together as a
family. Mr. Pinon was heavily involved in SA-M's life and was the only father she knew.
He took SA-M to school nearly every day and was involved in her education. The two
had a close and bonded relationship. SA-M considered Mr. Pinon her father and always
referred to him as "dad."

SA-M's mother, Ms. Morales-Rodriguez, encouraged their relationship, especially
after Mr. Alvarez moved out of state. Mr. Alvarez was largely absent from SA-M's life,
although he engaged in periodic phone calls every three to four months. From 2012 to
2016, Mr. Alvarez visited his daughter one time.

By 2016, Ms. Morales and Mr. Pinon were engaged to be married. These plans were cut short when Ms. Morales was murdered at her job. At the time, there were four children in their family, Mr. Pinon's two children from a prior marriage, SA-M, and the couples' young child.

PRETRIAL EVENTS

Several weeks after Ms. Morales' death, Mr. Pinon filed a pro se petition for third-party custody of SA-M and made arrangements to serve Mr. Alvarez. Mr. Alvarez moved back to Yakima and responded to Mr. Pinon's petition by seeking custody of SA-M. Mr. Pinon hired counsel, filed an amended petition to include a claim for common law de facto parent, and moved to retain custody of SA-M.

At an initial hearing, the court granted Mr. Pinon's motion to retain custody, reserved the issue of de facto parenting for trial, and ordered visitation with Mr. Alvarez. Mr. Alvarez took advantage of his scheduled visitation, took a parenting class, and filed a motion to transfer custody in August 2016. The commissioner denied the motion but appointed a guardian ad litem (GAL).

At a hearing in April 2017, the court adopted the GAL's report. After interviewing the parties and numerous witnesses, the GAL concluded that both men seemed capable of fulfilling parental duties, although he expressed concern that Mr. Alvarez had been willingly non-present for an extended period of time and was not aware of SA-M's

progress in school or mental health issues. The GAL noted that if this were a case between two legal parents, he would not recommend a change of custody from Mr. Pinon to Mr. Alvarez. But since he did not find the extreme circumstances needed to justify a nonparental custody order, the GAL recommended a slow transition of custody from Mr. Pinon to Mr. Alvarez.

Trial on Mr. Pinon's petition was continued several times as Mr. Alvarez cycled through attorneys. Meanwhile, as SA-M transitioned to custody with Mr. Alvarez, her grades in school fell, and her mental health deteriorated. Several reports were filed with Child Protective Services (CPS) regarding Mr. Alvarez's care of SA-M. In one instance, SA-M told a school counselor that Mr. Alvarez had hit her with the metal part of a belt, leaving a bruise on her rib cage. In another report, a hospital called CPS after SA-M was found some distance from Mr. Alvarez's home at 11:00 p.m. She was treated for scratches that she said were from her father hitting her with a fishing pole. Mr. Alvarez told the police that SA-M regularly runs away from home.

In follow-up investigations, a social worker noted that SA-M sometimes tells "tall tales" and exaggerates about being hit and her needs being met. SA-M and Mr. Alvarez began therapy sessions together and their relationship improved. After several follow-up visits in which no concerns were noted, the case was marked as ready for closure.

In March 2019, CPS received two more anonymous reports of abuse by Mr. Alvarez against SA-M. The anonymous source alleged that Mr. Alvarez regularly hit SA-

M with a belt, pulled her by the ear and hair, and otherwise physically abused her.  It appears these reports were made by Mr. Alvarez's ex-girlfriend, Veronica Granillo, who is also the mother of his second child born in 2018.  At no point did any of these reports result in SA-M being removed from Mr. Alvarez's home.

Trial was continued for the last time from May 2019 to July to allow the GAL to review newly available CPS reports and update the GAL report.  In the meantime, Mr. Pinon filed a petition for de facto parentage under the newly enacted de facto parenting statute, RCW 26.26A.440.

TRIAL

At trial, several witnesses testified for both parties.  Only some of the testimony is outlined below.

Mr. Pinon testified about the strength and nature of his relationship with SA-M— how she grew up calling him dad and how he regarded her as his daughter on the same footing with his other children.  He testified about how Ms. Morales-Rodriguez regarded him as a good parent to SA-M.  He testified about how he arranged for SA-M to see a therapist in the wake of her mother's death until custody switched to Mr. Alvarez.  He testified how he felt Mr. Alvarez was not a fit parent—he observed SA-M returning wearing clothing inappropriate for the weather, using social media inappropriately and

performing much worse in school. He observed SA-M struggling with transfers to Mr. Alvarez, and was concerned about the CPS reports.

Mr. Alvarez's ex-girlfriend, Veronica Granillo, testified on behalf of Mr. Pinon. She stated that she had a six-month relationship with Mr. Alvarez and during that time she became pregnant with his daughter, who was eleven months old at the time of trial. Ms. Granillo testified that while she was in a relationship with Mr. Alvarez, he treated SA-M poorly—pulling her hair and ears, spanking her with a belt, not using a car seat or seatbelt, not bathing her, and not knowing her whereabouts at times. She stated that she would intervene during episodes of physical abuse and hug SA-M. She further testified that Mr. Alvarez's sister is the one who primarily performs parenting duties when SA-M is with him. She recalled that at one point Mr. Alvarez threatened to take SA-M to Mexico and leave her there if he lost this case. She testified that she sends pictures of their daughter to Mr. Alvarez, but that he never responds and has no interest in custody of his other daughter.

Mr. Alvarez testified that he was present for SA-M's birth, first steps, and first word. He said he left Washington after his relationship with Ms. Morales ended so he could find work. He called SA-M every three or four months, and visited her in 2014 for a few days. He also sent $200 to SA-M's mother every month.

Mr. Alvarez testified that his relationship with SA-M has improved since they started counseling. He believes Mr. Pinon wants to exclude SA-M from his life. He testified that he performs all parenting functions and attends school events. He denied

ever physically abusing SA-M and denied ever spanking her. He testified that SA-M was hit with a belt when he hit a table in anger and the belt fell off the table. He testified that Ms. Granillo owes him money for bills. Although he denied telling SA-M to make up allegations against Mr. Pinon, Mr. Alvarez confirmed that he does not want Mr. Pinon to have any legal rights to SA-M. He also confirmed that he had been held in contempt for denying Mr. Pinon visits with SA-M.

The court-appointed GAL also testified. He indicated that Mr. Pinon seemed to meet all the statutory requirements of a de facto parent under the newly enacted statute, RCW 26.26A.440. The GAL testified that Mr. Pinon has had the stronger bond with SA-M for the majority of her life, that Mr. Pinon has the better past and potential future ability to parent, and that it was not in SA-M's best interest to lose contact with Mr. Pinon.

The GAL further testified that he had some concerns about Mr. Alvarez but does not believe that he is an unfit parent. During his most recent interview with SA-M, she indicated that she had changed her mind and now wanted to live with Mr. Alvarez. The GAL testified, however, that her statements to him, about being uncomfortable with Mr. Pinon, seemed rehearsed and came out in "odd spurts." He testified that her statements about how she wanted to live with Mr. Alvarez also seemed "very rehearsed." He commented that Mr. Alvarez seemed to have an overriding concern with the economic aspects of the case. In his report, on the subject of abusive use of conflict, the GAL specifically noted that it appears Mr. Alvarez continues to discuss the case, including

financial issues, in front of SA-M. Ultimately, however, the GAL recommended that SA-M stay with Mr. Alvarez. The GAL's recommendation was based on his concern for the disruption that another change in custody would cause to SA-M.

TRIAL COURT'S RULING

After the evidence was presented, the trial court provided its oral ruling. As the court put it, the first issue, whether Mr. Pinon was a de facto parent, "was easy; the second part is complicated." Considering residential placement of SA-M, the court put great weight in the GAL's statement that if the statute on de facto parenting had been in effect in 2017, the GAL would not have recommended a change in custody. The court concluded it was in the child's best interest to place custody with Mr. Pinon.

In its final parenting plan, the court designated Mr. Pinon as SA-M's custodian, ordered SA-M to live primarily with Mr. Pinon, and found that limitations should be put on Mr. Alvarez's time with SA-M. These limitations were supported by the court's findings:

> Child Abuse - Jose Luis Alvarez (or someone living in that parent's home) abused or threatened to abuse a child. The abuse was: physical repeated emotional abuse.
> . . . .
> Abusive use of conflict - Jose Luis Alvarez uses conflict in a way that endangers or damages the psychological development of the child listed in 2.

Clerk's Papers (CP) at 908-09.

Mr. Alvarez appeals.

8

ANALYSIS

DE FACTO PARENTING

Effective January 1, 2019, the Washington Uniform Parentage Act (WUPA), ch. 26.26A RCW, was updated to provide statutory recognition of de facto parents. "This provision ensures that individuals who form strong parent-child bonds with children with the consent and encouragement of the child's legal parent are not excluded from a determination of parentage simply because they entered the child's life sometime after the child's birth." UNIF. PARENTAGE ACT (2017) § 609 cmt., 98 U.L.A. 81 (2019).

To establish rights as a de facto parent, the petitioner must prove, by a preponderance of the evidence, the seven factors set forth in RCW 26.26A.440(4):

(a) The individual resided with the child as a regular member of the child's household for a significant period;

(b) The individual engaged in consistent caretaking of the child;

(c) The individual undertook full and permanent responsibilities of a parent of the child without expectation of financial compensation;

(d) The individual held out the child as the individual's child;

(e) The individual established a bonded and dependent relationship with the child which is parental in nature;

(f) Another parent of the child fostered or supported the bonded and dependent relationship required under (e) of this subsection; and

(g) Continuing the relationship between the individual and the child is in the best interest of the child.

At trial in this case, the court found that Mr. Pinon had proved all seven factors and was therefore SA-M's de facto parent. On appeal, Mr. Alvarez only challenges the court's finding on the last factor: that it was in SA-M's best interest to continue her relationship with Mr. Pinon. With respect to this factor, the court made two findings. First, that it was in SA-M's best interest to continue her relationship with Mr. Pinon. The court also found, "It is in [SA-M's] best interest that Petitioner be her primary parent because of his shown parenting abilities and the close bond [SA-M] has with him and because respondent is not a fit parent." CP at 805. Mr. Alvarez raises several issues with respect to this finding.

Before reaching the specific arguments raised by Mr. Alvarez, it is important to distinguish the findings that support a de facto parent from the findings that support a residential schedule. The first step is to decide whether Mr. Pinon is a de facto parent. By statute, this conclusion now requires a finding that "[c]ontinuing the relationship between the individual and the child is in the best interest of the child." RCW 26.26A.440(4)(g).[1] Once declared a de facto parent, the petitioner "stands in legal parity with an otherwise legal parent, whether biological, adoptive, or otherwise." *In re Parentage of L.B.*, 155 Wn.2d 679, 708, 122 P.3d 161 (2005).

---

[1] This statutory element to finding a de facto parent relationship is different from the common law elements. Under common law, the child's best interest was a secondary consideration, and only came into play when the court was determining parental rights and responsibilities. *In re Parentage of L.B.*, 155 Wn.2d 679, 708, 122 P.3d 161 (2005).

If the court finds a de facto parentage has been established, then the court can decide custody if residential placement is also an issue. "[R]ecognition of a person as a child's *de facto* parent necessarily 'authorizes [a] court to consider an award of parental rights and responsibilities . . . based on its determination of the best interest of the child.'" *Id*. (quoting *C.E.W. v. D.E.W.*, 2004 ME 43, 845 A.2d 1146, 1151-52). In deciding a child's residential schedule, a court must again consider the child's best interest. RCW 26.09.184(1)(g). But finding that it is in the child's best interest to continue a de facto relationship is distinct from determining the child's best interest for purposes of custody. The interests are not necessarily the same.

In challenging the "best interest" factor for purposes of the de facto parenting petition, Mr. Alvarez argues that both he and Mr. Pinon are equally capable parents, Mr. Alvarez is not unfit, and Mr. Alvarez's biological connection gives him an advantage over Mr. Pinon in determining custody. To the extent that Mr. Alvarez is contesting the court's finding that Mr. Pinon is a de facto parent, we reject his argument.

In finding that it is in SA-M's best interest to continue a relationship with Mr. Pinon, the court does not have to find that Mr. Pinon is a better parent than Mr. Alvarez or that Mr. Alvarez is unfit. Instead, the focus is on the relationship between SA-M and Mr. Pinon. *See In re Matter of L.J.M.*, 15 Wn. App. 2d 588, 602, 476 P.3d 636 (2020) (requisite finding that one parent supported the de facto relationship has nothing to do with the other genetic parent). Finding that a person is a de facto parent is not a zero-sum

determination. Indeed WUPA makes clear that a court may find that a child has more than two parents if failing to recognize a de facto parent would be detrimental to the child. RCW 26.26A.460(3). "A finding of detriment to the child does not require a finding of unfitness of any parent or individual seeking an adjudication of parentage." *Id.*

In his reply brief, Mr. Alvarez argues that the trial court conflated the best interest standards for a de facto parent and custody determinations. Again, the trial court found that it was in "SA-M's best interest that [Mr. Pinon] be her primary parent because of his shown parenting abilities and the close bond [SA-M] has with him and because respondent is not a fit parent." We agree that the trial court seemed to combine the findings for a de facto parent with the findings necessary for custody, but any error was harmless.

To be clear, the court found that it was in SA-M's best interest to continue her relationship with Mr. Pinon. As the court noted, this finding is supported by evidence that SA-M and Mr. Pinon had a strong bond and Mr. Pinon had demonstrated parenting abilities. The additional finding—that it is in SA-M's best interest for Mr. Pinon to be her primary parent—implicitly recognizes that their relationship should continue.

In this case, the trial court found that Mr. Pinon proved the seven factors set forth in RCW 26.26A.440(4) by a preponderance of the evidence and declared him a de facto parent to SA-M. Other than the court's determination on the child's best interest, Mr.

Alvarez does not seriously contest the court's other findings with respect to Mr. Pinon's de facto parenting status.

RESIDENTIAL SCHEDULE

Mr. Alverez's primary challenge on appeal seems to be the trial court's determination of custody, not parentage. His arguments focus on which of the two men is the better parent, and he challenges the trial court's finding that he is an unfit parent and that his time with SA-M should be limited.

In reviewing Mr. Alvarez's challenge to the determination of custody, we give broad deference to the trial court's findings. An appellate court will not lightly disturb a custody ruling due to the trial court's "unique opportunity to personally observe the parties." *In re Custody of Stell*, 56 Wn. App. 356, 366, 783 P.2d 615 (1989). The trial court's decision will stand absent an abuse of discretion. *In re Marriage of McDole*, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993). A trial court abuses its discretion if it applies the law incorrectly or relies on unsupported facts. *Gildon v. Simon Prop. Grp., Inc.*, 158 Wn.2d 483, 494, 145 P.3d 1196 (2006).

Findings of fact will be reviewed to determine if they are supported by substantial evidence. *Price v. Kitsap Transit*, 125 Wn.2d 456, 465, 886 P.2d 556 (1994). Substantial evidence is evidence sufficient to persuade a fair and rational person of the truth of a premise. *Id*. at 466. Appellate courts review de novo whether a trial court's conclusions

13

of law flow from its findings. *Rogers v. Dep't of Labor & Indus.*, 151 Wn. App. 174, 180, 210 P.3d 355 (2009).

Whether evidence is sufficient to meet or overcome a burden of proof is a question that requires weighing of the evidence. *Spivey v. City of Bellevue*, 187 Wn.2d 716, 728-29, 389 P.3d 504 (2017). "Appellate courts are not suited for, and therefore not in the business of, weighing and balancing competing evidence." *Renz v. Spokane Eye Clinic, P.S.*, 114 Wn. App. 611, 623, 60 P.3d 106 (2002). Nor will a reviewing court make credibility determinations on appeal. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). Instead, an appellate court considers the evidence in a light most favorable to the prevailing party to determine if a rational trier of fact could find the fact more likely than not to be true. *In re Welfare of X.T.*, 174 Wn. App. 733, 737, 300 P.3d 824 (2013). If there is substantial evidence to support a finding, it does not matter if there is contradictory evidence in the record. *Burrill v. Burrill*, 113 Wn. App. 863, 868, 56 P.3d 993 (2002).

Preliminarily, we reject Mr. Alvarez's argument that the trial court's parenting plan interferes with his fundamental rights as a natural parent. Once the court properly declared Mr. Pinon to be a de facto parent, he stood in parity with Mr. Alvarez for purposes of residential time and decision-making: "a parent-child relationship established under this chapter applies for all purposes, except as otherwise provided by law of this state other than this chapter." RCW 26.26A.110. Thus, the rights and responsibilities that

14

attach to de facto parents "do not infringe on the fundamental liberty interests of the other legal parent in the family unit." *L.B.*, 155 Wn.2d at 712.

Decisions on custody are governed by RCW 26.09.187. The statute sets forth seven factors to consider in deciding residential schedules and decision-making authority between parents, with the greatest weight given to the first factor:

> (i) The relative strength, nature, and stability of the child's relationship with each parent;
>
> (ii) The agreements of the parties, provided they were entered into knowingly and voluntarily;
>
> (iii) Each parent's past and potential for future performance of parenting functions as defined in *RCW 26.09.004(3), including whether a parent has taken greater responsibility for performing parenting functions relating to the daily needs of the child;
>
> (iv) The emotional needs and developmental level of the child;
>
> (v) The child's relationship with siblings and with other significant adults, as well as the child's involvement with his or her physical surroundings, school, or other significant activities;
>
> (vi) The wishes of the parents and the wishes of a child who is sufficiently mature to express reasoned and independent preferences as to his or her residential schedule; and
>
> (vii) Each parent's employment schedule, and shall make accommodations consistent with those schedules.

RCW 26.09.187(3)(a).

In concluding that Mr. Pinon should be awarded primary custody, the court found:

> [SA-M'S] strength, nature and stability of relationship is stronger with Gabriel Pinon than Jose [Alvarez] and she is more closely bonded to Gabriel than Jose and views Gabriel as her father. Gabriel has done the majority of parenting factors on a daily basis for the majority of the child's life and taken greater responsibility to perform the role of a parent than Jose. Gabriel's past

15

and potential to perform parenting functions is stronger than Jose's. Considering[SA-M]'s age and her developmental level, [SA-M]'s best interests are served by placing her care, custody and control with Gabriel.

CP at 853. The court also found that Mr. Alvarez is subject to limiting factors under RCW 26.09.191 and is not a fit parent. *Id*.

There is substantial evidence in the record to support these findings. The trial court adopted the GAL's trial testimony concerning these statutory factors. Mr. Pinon was the only father figure in SA-M's life from the time she was 18 months old until almost her sixth birthday. During that time, Mr. Pinon provided consistent caretaking and full parenting responsibilities for SA-M and the other children in his household. There was ample testimony about Mr. Pinon's passion for parenthood and how he has successfully raised other children. There was evidence from several witnesses that he and SA-M share a strong, durable bond. The trial court had the opportunity to listen firsthand to all witnesses, make credibility determinations on disputed testimony, and weigh the evidence.

Finally, substantial evidence supports the trial court's finding that Mr. Alvarez is an unfit parent and should have limitations imposed on his residential time. The trial court found that Mr. Alvarez was physically and emotionally abusive and that he employed an abusive use of conflict in a way that damaged SA-M's development. As the court noted, Mr. Alvarez had a history of abandoning both of his children. Prior to the death of Ms. Morales, Mr. Alvarez had visited his daughter SA-M one time in four years. Testimony at trial indicated that he was making no attempt to be involved in his youngest daughter's life.

16

There was also evidence that while SA-M was in Mr. Alvarez's custody, her performance in school fell sharply and her mental health deteriorated. There were several allegations from different sources that Mr. Alvarez used corporal punishment and failed to care for SA-M. There was testimony in the GAL's report that SA-M would have bruises she did not want to explain when she came from Mr. Alvarez's house. As the GAL explained, he was not surprised by CPS's finding because the majority of their reports come back unfounded.

The evidence also supported the court's finding that Mr. Alvarez employed abusive use of conflict. He threatened to leave the country with SA-M if he lost his court case. Mr. Alvarez testified at trial that he does not want Mr. Pinon to have any legal rights regarding SA-M. The trial court noted SA-M's spontaneous and reoccurring statements to the GAL that she wanted to live with Mr. Alvarez appeared rehearsed and suggested that Mr. Alvarez was applying pressure on the child to support his claim for custody. SA-M also made unprompted comments to the GAL about Mr. Pinon's use of funds that were intended for SA-M, and Mr. Alvarez admitted talking to her about the funds she was receiving from Social Security.

While much of this evidence was disputed, it is fully within the trial court's discretion to weigh the evidence and determine witness credibility. In the end, there is substantial evidence to support the trial court's findings and conclusions that Mr. Pinon is

No. 37108-5-III
*In re Custody of SA-M*

SA-M's de facto parent, that primary residential time should be granted to Mr. Pinon, with limitations placed on Mr. Alvarez's residential time.

ATTORNEY FEES

Mr. Pinon requests attorney fees on appeal, arguing that the appeal was frivolous. RAP 18.9 empowers this court to award attorney fees for frivolous appeals. An appeal is frivolous when it presents "no debatable issues upon which reasonable minds could differ," and is lacking in merit "that there [is] no reasonable possibility of reversal." *Mahoney v. Shinpoch*, 107 Wn.2d 679, 691, 732 P.2d 510 (1987). RCW 26.26B.060 and RCW 26.26A.510 also empower this court to order reasonable attorney fees.

CONCLUSION

Mr. Alvarez's appeal is not frivolous. The law is not well-developed on the newly enacted statute pertaining to de facto parentage. The issues were well presented and meritorious. The court below ordered each party to pay their own fees. We deny Mr. Pinon's request for attorney fees.

Affirm.

_____
Staab, J.

WE CONCUR:

_____           _____
Lawrence-Berrey, J.                                        Pennell, C.J.

18