**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

**FILED**
**JANUARY 19, 2023**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Parentage of: | ) | No. 38668-6-III |
| | ) | |
| L.T.[†] | ) | PUBLISHED OPINION |
| | ) | |

PENNELL, J. — Elizabeth Rall petitioned for de facto parentage of her nephew, L.T. Although Ms. Rall has been L.T.'s exclusive caretaker for most of his life, the trial court dismissed the petition because Ms. Rall had gained custody of L.T. through a nonparental custody decree. The trial court reasoned that such orders are meant to be temporary; thus, Ms. Rall had not undertaken "permanent" parental responsibilities for L.T. as required by statute. RCW 26.26A.440(4)(c).

We reverse. The de facto parentage statute does not categorically exclude nonparental custodians from becoming de facto parents. The statute recognizes that an adult who is not a biological or adoptive parent may form a parental bond with a child. The existence of such a bond is not negated by a preexisting legal relationship,

---

[†] To protect the privacy interests of the minor child, we use their initials throughout this opinion. Gen. Order 2018-1 of Division III, *In re Changes to Case Title* (Wash. Ct. App. Sept. 1, 2018), https://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber=2018_001&div=III

No. 38668-6-III
*In re Parentage of L.T.*

such as a custody order. Every petitioner for de facto parentage is entitled to thoughtful

consideration of their petition according to the terms of the de facto parentage statute.

If the statutory requirements are met by a preponderance of the evidence, an order of

de facto parentage should issue. Because Ms. Rall alleged facts sufficient to justify an

order of de facto parentage, her petition was entitled to a full adjudication.

FACTS

Eleven-year-old L.T. is the biological son of Janice Kirkpatrick. L.T.'s father

has played no meaningful role in L.T.'s life and has not participated in this litigation.

Ms. Kirkpatrick has had some involvement with L.T. but it has been limited. When L.T.

was three years old, Ms. Kirkpatrick's sister, Elizabeth Rall, assumed all responsibilities

for L.T.'s care. Ms. Rall's involvement was prompted by "drug use by both parents,

neglect and emotional abuse." Clerk's Papers (CP) at 31 (capitalization omitted).

At some point after L.T. began living with Ms. Rall, Ms. Kirkpatrick came to visit

L.T. with a male companion. According to Ms. Rall, during this visit Ms. Kirkpatrick and

her companion "were both visibly high and [Ms. Kirkpatrick] wanted money." *Id.* at 70.

When Ms. Rall told her sister she did not have any money, Ms. Kirkpatrick allegedly

threatened to take L.T. away. This episode motivated Ms. Rall to seek third-party custody

of L.T.

2

No. 38668-6-III
*In re Parentage of L.T.*

In May 2015, Ms. Rall and Ms. Kirkpatrick entered into a mediated settlement agreement and parenting plan that placed L.T. in Ms. Rall's primary custody. In July, the superior court awarded third-party custody of L.T. to Ms. Rall and issued a parenting plan consistent with the parties' settlement agreement.[1] Ms. Kirkpatrick did not attend the court's hearing. The parenting plan granted Ms. Kirkpatrick visitation at least twice a month in a therapeutic setting. The court's orders also recognized Ms. Rall was entitled to child support and that "[t]he issues of current and back child support owed by" Ms. Kirkpatrick and L.T.'s father would be governed by preexisting administrative orders. *Id.* at 27, 37.

For the next five years, Ms. Kirkpatrick failed to exercise her visitation rights. She also did not make child support payments. In fact, according to Ms. Rall, Ms. Kirkpatrick did not have any contact with L.T. at all during this period, in person or otherwise. Meanwhile, Ms. Rall continued to parent L.T. She allegedly integrated him into her immediate family, advocated for him to receive necessary resources at school, and facilitated his medical care. During the period in which Ms. Kirkpatrick

---

[1] The court's custody decree was entered pursuant to the nonparental child custody statute, chapter 26.10 RCW. *See* former RCW 26.10.040 (2000), *repealed by* LAWS OF 2020, ch. 312, § 905. This chapter has since been replaced by the minor guardianship statute. *See* RCW 11.130.185-.260.

3

No. 38668-6-III
*In re Parentage of L.T.*

had no contact, L.T. grew from a toddler into a child on the cusp of middle school.

In March 2020, Ms. Rall decided she wanted to facilitate communication between L.T. and one of his half-siblings. She reached out to counselors to try to arrange visitation with Ms. Kirkpatrick. Ms. Kirkpatrick engaged in some visitation with L.T., including two overnight stays. According to Ms. Rall, this process was "disastrous." *Id.* at 41.

In April 2021, Ms. Rall filed a petition to be recognized as L.T.'s de facto parent. In a declaration supporting her petition, Ms. Rall explained L.T. had been in her exclusive care since April 2014 and the two had developed a parent-child relationship. Ms. Rall alleged that, during this seven-year period:

- She was the only person to take L.T. to medical appointments, attend his parent-teacher conferences, and enroll him in extracurricular activities. According to Ms. Rall, L.T.'s teachers and healthcare providers refer to her as L.T.'s "mom." *Id.* at 43.

- Ms. Rall has been the only person to financially support L.T. Although child support had been ordered, no support payments had been received from either biological parent. Ms. Rall acknowledged she at times had received "non needy" TANF (Temporary Assistance for Needy Families) benefits as a result of L.T.'s residence with her. *Id.* at 42.

No. 38668-6-III
*In re Parentage of L.T.*

- Ms. Rall had been L.T.'s exclusive source of social guidance, day-to-day care, and emotional development. L.T. understands Ms. Rall is not his biological mother, but he refers to Ms. Rall as "mom" and recognizes her with cards on Mother's Day. *Id.* at 43.

- Ms. Rall and L.T. share a close relationship and enjoy spending time together. Ms. Rall has incorporated L.T. into her blended family. Ms. Rall's older children see L.T. as their little brother.

- Ms. Rall loves L.T. just as much as her other children.

Ms. Kirkpatrick responded to Ms. Rall's petition. Ms. Kirkpatrick asked the court to deny Ms. Rall's petition and alleged it was in L.T.'s best interest to reside with her, not Ms. Rall. Ms. Kirkpatrick wrote, "[L.T.] knows me as his mother and knows [Ms. Rall] as his aunt." *Id.* at 55. She further asserted, "I have always understood this parenting arrangement to be temporary and have been working hard to get to a point where I would be able to parent [L.T.]." *Id.* In a memorandum of authorities filed with the superior court, Ms. Kirkpatrick claimed she had been working to manage her health and had repeatedly sought over the years to be involved in L.T.'s life. Ms. Kirkpatrick claimed Ms. Rall does not consider L.T. to be one of her children, citing text messages that are not in the record.

5

No. 38668-6-III
*In re Parentage of L.T.*

Ms. Kirkpatrick claimed she had set up a bedroom for L.T. along with spaces for study and play.

The superior court dismissed Ms. Rall's petition for de facto parentage. The court concluded, based on the pleadings, that an evidentiary hearing was unnecessary and held that Ms. Rall had "not met the standard for the case to go forward." *Id.* at 102. The superior court explained its conclusion:

> The petitioner is a third-party custodian. As such, that legal custodial arrangement confers "temporary" custody to a third-party—not acquiescence by a parent to a full [and] permanent arrangement, nor is the child held out to be a "child" of the petitioner.

*Id.* Ms. Rall timely appeals.

ANALYSIS

Washington law recognizes a parent-child bond can be formed outside the traditional context of birth or adoption. *See In re Parentage & Custody of A.F.J.*, 161 Wn. App. 803, 810, 260 P.3d 889 (2011), *aff'd*, 179 Wn.2d 179, 314 P.3d 373 (2013) (describing de facto parentage as a necessary innovation that filled legal interstices). An individual who undertakes the role of parenting a child for a significant period of time can be recognized as a de facto parent, on equal footing with otherwise legal parents. *See In re Parentage of L.B.*, 155 Wn.2d 679, 708, 122 P.3d 161 (2005). De facto parents

6

No. 38668-6-III
*In re Parentage of L.T.*

have legal rights and obligations toward children that can be recognized in court through

a de facto parentage action.

The current method in Washington for establishing de facto parentage is set by

RCW 26.26A.440.[2] This statutory process involves two steps. First, to proceed to a full

hearing, the petitioner must establish standing by alleging facts sufficient to justify

success on the merits. *See* RCW 26.26A.440(3)(c); *Walker v. Riley*, 19 Wn. App. 2d 592,

602, 498 P.3d 33 (2021). If standing is satisfied, the petitioner must then prove their

de facto parentage claim by a preponderance of the evidence. RCW 26.26A.440(4).

A claim of de facto parentage requires proof of seven elements. They are as

follows:

> (a) The [petitioner] resided with the child as a regular member of the child's household for a significant period;
> (b) The [petitioner] engaged in consistent caretaking of the child;
> (c) The [petitioner] undertook full and permanent responsibilities of a parent of the child without expectation of financial compensation;
> (d) The [petitioner] held out the child as the [petitioner]'s child;
> (e) The [petitioner] established a bonded and dependent relationship with the child which is parental in nature;
> (f) Another parent of the child fostered or supported the bonded and dependent relationship required under (e) of this subsection; and
> (g) Continuing the relationship between the [petitioner] and the child is in the best interest of the child.

---

[2] Before enactment of the statute, the requirements were set by common law. *See L.B.*, 155 Wn.2d at 707.

No. 38668-6-III
*In re Parentage of L.T.*

*Id.* To establish standing, a petitioner must allege facts that, if proved, would be sufficient to satisfy each element. *In re Parentage of L.J.M.*, 15 Wn. App. 2d 588, 595, 476 P.3d 636 (2020). After an evidentiary hearing on the merits, the court ultimately decides whether the petitioner has proved the seven elements by a preponderance of the evidence and should therefore be adjudicated a de facto parent. *Id.* at 595-96.

Where, as here, a de facto parentage petition is dismissed for lack of standing, our review is de novo. *Id*. at 596-97.

On appeal, the parties agree Ms. Rall has alleged sufficient facts to support all but one of the seven statutory elements. The only disputed element is the third,[3] which requires a petitioner to show they "undertook full and permanent responsibilities . . . without expectation of financial compensation." RCW 26.26A.440(4)(c). Ms. Kirkpatrick argues this provision is not satisfied because Ms. Rall undertook only temporary responsibilities for L.T. and Ms. Rall undertook her responsibilities with an expectation of financial compensation. We disagree with both contentions and address each in turn.

_____

[3] The trial court's order appears to have concluded that Ms. Rall also failed to satisfy the fourth element. But on appeal, the parties agree that Ms. Rall has sufficiently alleged facts indicating she has "held out" L.T. as her child. RCW 26.26A.440(4)(d). We agree with the parties. *Compare Walker*, 19 Wn. App. 2d at 604 ("[H]olding a child out as one's own is to assert a status as a parent or parent-like as opposed to a caretaker."), *with* CP at 43 (Ms. Rall's sworn allegation that L.T.'s teachers, speech therapist, and doctor "refer[ ] to" her and "know[ ]" her as L.T.'s "mom.").

No. 38668-6-III
*In re Parentage of L.T.*

*Permanence*

At the outset, Ms. Rall's agreement to take L.T. into her care was undoubtedly intended as temporary. Ms. Kirkpatrick was struggling with substance abuse, prompting Ms. Rall to seek a third-party custody order that was intended to formalize Ms. Rall's custody of L.T. while Ms. Kirkpatrick worked to achieve stability. *See In re Custody of Z.C.*, 191 Wn. App. 674, 693, 366 P.3d 439 (2015). But the initial intent behind Ms. Rall's care for L.T. was not set in stone.

Over the course of several years, it is apparent Ms. Rall's relationship with L.T. gradually transitioned from a temporary arrangement to a lasting situation.[4] According to Ms. Rall's sworn allegations, Ms. Kirkpatrick declined to exercise her right to court-authorized visitation for five years of L.T.'s childhood. By purportedly abandoning L.T., Ms. Kirkpatrick consented to a formation of a parent-like bond between L.T. and his custodian, Ms. Rall. *See Walker*, 19 Wn. App. 2d at 606-07 (analyzing the consent element of RCW 26.26A.440(4)(f)). Ms. Rall responded to Ms. Kirkpatrick's lengthy absence by continuing to accept L.T. in her home. In so doing, Ms. Rall tacitly expressed

---

[4] We note that in the dependency and termination context, the passage of just one year can be sufficient to transform a temporary dependency action, intended to foster familial reunification, to one involving termination of parental rights. *See* RCW 13.34.180(1)(e).

9

No. 38668-6-III
*In re Parentage of L.T.*

an understanding that her relationship with L.T. had transformed from a temporary arrangement into something more permanent. Ms. Rall further solidified her intent to permanently include L.T. in her life as her son by addressing his medical, academic, and extracurricular needs; allowing L.T. to call her "mom" instead of "Aunt Lizzy"; and by encouraging her other children to see L.T. as a sibling rather than as a cousin. CP at 43.

Contrary to the trial court's reasoning, Ms. Rall's status as a third-party custodian does not prevent her from satisfying the de facto parent criteria. *Cf. Walker*, 19 Wn. App. 2d at 606 (rejecting the argument that a biological grandmother could not become a de facto parent because of the "temporary status" of the court order granting her custody). The de facto parentage statute simply states that a petitioner who meets all the required elements "shall" be adjudicated a de facto parent. RCW 26.26A.440(4). It does not say "except for third-party custodians." *See Rivas v. Overlake Hosp. Med. Ctr.*, 164 Wn.2d 261, 270, 189 P.3d 753 (2008) (noting that if "the legislature intended" a certain meaning "it would have said so").

Every petitioner for de facto parentage deserves an individual assessment of their case, regardless of any preexisting legal relationship to the child. *See A.F.J.*, 161 Wn. App. at 815. Many—perhaps most—temporary custodians will not be able to allege sufficient facts to establish standing to petition for de facto parentage. But there is no

10

No. 38668-6-III
*In re Parentage of L.T.*

absolute bar. *Cf. A.F.J.*, 179 Wn.2d at 182 (holding foster parent status is not a bar to

de facto parentage, but acknowledging foster parents will not be able to meet the criteria

in most cases). Here, Ms. Rall has alleged sufficient facts to justify a finding that she has

undertaken permanent parental responsibilities.

*Expectation of financial compensation*

Even an individual who has undertaken permanent parental responsibilities

will be ineligible for de facto parentage if they did so with "expectation of financial

compensation." RCW 26.26A.440(4)(c). Ms. Rall has not been paid any kind of salary

or wages in exchange for caring for L.T. But Ms. Kirkpatrick argues Ms. Rall flunks this

requirement because Ms. Rall received a child support order for L.T. and has obtained

government benefits as a consequence of L.T. living with her.

Ms. Kirkpatrick's argument falls short because it conflates *receipt* of

compensation with *expectation* of compensation. Ms. Rall has received some limited

compensation in the form of government benefits while L.T. has been in her care.

But this does not mean Ms. Rall undertook the obligation of parenting L.T. with the

"expectation" of financial compensation. *Id.*

In her petition and accompanying declaration, Ms. Rall states she undertook the

obligation to provide permanent parenting responsibilities for L.T. "without expectation"

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38668-6-III
*In re Parentage of L.T.*

of payment. CP at 7, 41. The circumstances of her case corroborate this claim. When Ms. Rall first took L.T. into her care, she did so informally because of Ms. Kirkpatrick's battle with addiction. At that point, Ms. Rall did not seek compensation. Nor was she acting as a professional childcare provider. *See L.B.*, 155 Wn.2d at 712 (assuaging fears that nannies and other similar caregivers would be able to successfully petition for de facto parentage). Rather, Ms. Rall's actions appear to have been motivated by love, concern, and a sense of familial obligation. She explains she sought nonparental custody after an incident in 2014 caused her to become concerned for L.T.'s welfare. Although the nonparental custody decree was accompanied by an award of child support, the facts alleged by Ms. Rall do not indicate she sought third-party custody with an *expectation* that she would actually receive child support. To the contrary, Ms. Rall claims she has never actually received any child support. This is noteworthy, given Ms. Rall apparently could have pursued contempt sanctions due to nonpayment of child support. *See* RCW 26.18.050(1). The only compensation Ms. Rall has received in relation to her care for L.T. is the receipt of some TANF benefits. However, there is no reason to think Ms. Rall agreed to care for L.T. with the knowledge she would someday receive such benefits.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38668-6-III
*In re Parentage of L.T.*

Ms. Rall has alleged sufficient facts supporting a finding that she undertook parenting responsibilities without an expectation of compensation. It could be that, after a hearing on the merits, a fact finder could determine Ms. Rall actually did have an expectation of compensation, despite her claims to the contrary. But at this preliminary stage, Ms. Rall's petition is not subject to dismissal on this basis.

## CONCLUSION

Ms. Rall has alleged facts sufficient to establish standing for a de facto parentage action. She therefore is entitled to a hearing on the merits. Nothing in our opinion should be interpreted to prejudge whether Ms. Rall will ultimately prevail on her de facto parentage petition. That is a matter to be decided by the trial court. This matter is reversed and remanded for further proceedings. Ms. Kirkpatrick's request for attorney fees is denied.

_____
Pennell, J.

WE CONCUR:

_____
Fearing, J.

_____
Staab, J.

13