
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| LANA WALKER, | ) | |
| | ) | No. 37690-7-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WARREN RILEY, | ) | PUBLISHED OPINION |
| TOSCANINI BIRCH,[†] | ) | |
| | ) | |
| Respondents. | ) | |

STAAB, J. — After taking care of her granddaughter, E.L. for 13 years, Lana

Walker filed a petition for de facto parentage. Walker's daughter, Toscanini Birch,

E.L.'s mother, disputed the petition. A superior court commissioner found that Walker

did not have standing to pursue a de facto parentage petition because she does not hold

E.L. out as her own daughter and dismissed the de facto parenting petition. Walker

appeals. In response, Birch contends that the commissioner's ruling was correct, and in

the alternative, argues that Walker also failed to prove that she (Birch) consented to a

parent-like relationship between Walker and E.L.

---

[†] Formally known as Wojnas.

We reverse the commissioner's order dismissing Walker's petition for de facto parentage. In doing so, we adopt the decision by Division Two in *In re Parentage of L.J.M.*, 15 Wn. App. 2d 588, 476 P.3d 636 (2020), and hold that standing for purposes of a de facto parentage requires a petition to set forth facts sufficient to prove each element of de facto parentage. Any dispute of the facts necessary to demonstrate standing will be resolved at an expedited hearing.

In this case, Birch disputes whether Walker met her burden of proving the factors of "holding out" and consent. We conclude that the element of "holding out" a child as one's own does not require a petitioner to claim that they are a biological parent. Instead, it requires the petitioner to prove that she held herself out to the public in a parental capacity as opposed to a caretaker. Finally, we conclude that when a legal parent, who was then capable of parenting, voluntarily chooses to absent herself from the child's life while the child is in the petitioner's sole custody, she necessarily consents to and fosters the parent-like relationship between the petitioner and the child. We remand for the court to determine if Walker can meet her burden of proving standing in light of these definitions.

## FACTS

E.L. is 14 years old. Lana Walker is E.L.'s maternal grandmother. E.L. has lived with her grandmother since she was approximately three months old. In support of her petition for de facto parentage, Walker alleged that in October 2007, Birch consented to a

court order granting nonparental custody of E.L. to Walker. E.L.'s father failed to appear at the adjudication of custody as well as subsequent hearings. Under the final parenting plan, Birch was granted supervised visits with E.L.

On March 23, 2018, 11 years later, Birch filed a petition for modification requesting E.L. reside with her primarily and have visitation with Walker every other weekend. In her petition for modification, Birch stated she had been sober for six years, completed two years of outpatient training, taken parenting classes, and earned her bachelor's degree. A superior court commissioner found adequate cause to modify the final parenting plan. A guardian ad litem was appointed. In 2019, Birch's motion for a temporary parenting plan was granted, allowing her to have visitation every other weekend and phone communication every Tuesday. E.L. continues to live with her grandmother who cares for her medical, educational, and emotional needs.

On March 17, 2020, Walker filed a motion to establish de facto parentage. She explained that E.L. had lived with her since E.L. was three months old. Since that time, Walker has performed all parenting duties of the child, including attending medical appointments, parent-teacher conferences, extra-curricular activities, and church performances. Walker calls E.L. her daughter, and E.L. refers to her as "mom." Additionally, E.L. gives Walker Mother's Day cards. Walker said from the time E.L. was about three months old until she was about nine years old, Birch's visits with E.L. were sporadic and short. When E.L. was about nine years old, Birch started showing

more interest in E.L. and would sometimes meet her at a park or at E.L.'s grandfather's house. However, her visits remained inconsistent, and she did not show up to many of E.L.'s events.

Birch opposed Walker's petition for de facto parentage. She disputed Walker's claim of a bonded relationship with E.L., asserting that Walker was simply a caregiver. Birch argued that she did not consent to the relationship between E.L. and Walker, and has been fighting for more than two years to regain custody

In her reply, Walker pointed out that Birch waited six years from when she became sober to seek custody of E.L. During that time, she received post-secondary education, obtained a stable job, found a home, and was married. Walker argued that by failing to seek custody during that time, Birch consented to and fostered a parent-like relationship between Walker and E.L. Although Walker admits that she did not tell people that E.L. was her daughter, her actions were consistent with that of a parent, and she held out E.L. as her child.

An adequate cause hearing occurred on June 2, 2020, before a superior court commissioner. The commissioner determined that each of the seven statutory factors must be demonstrated for a petitioner to have standing. The commissioner found that Walker failed to establish all the factors outlined in RCW 26.26A.440(4) because Walker "has not held out the child as the Petitioner's child." Clerk's Papers (CP) at 72.

4

No. 37690-7-III
*Walker v. Riley, et al*

Walker filed a motion for revision. The motion for revision was denied. The decision was then timely appealed to this court.

ANALYSIS

The parties dispute whether Walker has proved facts sufficient to establish standing to bring a de facto parentage action under RCW 26.26A.440. The issues raised in this appeal require us to interpret the statute on de facto parentage. We apply a de novo standard of review when interpreting statutes, with the primary goal of determining the legislative intent. *In re Parentage of J.D.W.*, 14 Wn. App. 2d 388, 396, 471 P.3d 228 (2020). Our first step is to consider the statute's plain language, along with the context of the statutory scheme as a whole. *Id*. at 397. When a statute such as this has been modeled after a "uniform act that (1) was promulgated by the Uniform Law Commission (ULC) and (2) mandates that consideration be given to the need to promote uniformity among the states that enact it, we may look to the ULC's official comments to construe the statute even when it is not ambiguous." *Id*. at 397 (footnote and citations omitted).

De facto parentage was created by common law to provide a path to parentage for individuals who formed a strong parent-child relationship with a child. *In re Parentage of L.B.*, 155 Wn.2d 679, 122 P.3d 161 (2005). In doing so, the court recognized the changing demographics of an average American family. *Id*. at 707. The court set forth factors for establishing the status as a common law de facto parent but expressly limited the status to "'those adults who have fully and completely undertaken a permanent,

5

unequivocal, committed, and responsible parental role in the child's life.'" *Id.* at 708

(quoting *C.E.W. v. D.E.W.*, 2004 ME 43, 845 A.2d 1146, 1152 (2004)).

Effective January 2019, the Washington State Legislature codified de facto

parentage, RCW 26.26A.440, adopting language from the Uniform Parentage Act of

2017, 9B U.L.A. 37 (2019). This provision allows for parental rights to be established by

adjudication. Similar to the common law pronouncement, the purpose of the statute is to

"'ensure[ ] that individuals who form strong parent-child bonds with children with the

consent and encouragement of the child's legal parent are not excluded from a

determination of parentage simply because they entered the child's life sometime after

the child's birth.'" *J.D.W.*, 14 Wn. App. 2d at 404 (quoting UNIF. PARENTAGE ACT

(2017) § 609 cmt., 9B U.L.A. 80-81 (2019)). The Washington statute provides for the

establishment of de facto parentage by a nonparent when statutory requirements are met.

RCW 26.26A.440. A petitioner seeking de facto parentage status must initially meet the

requirements for standing. If the petition survives the initial determination of standing,

the petitioner must prove seven factors by a preponderance of the evidence in order to be

declared a de facto parent.

1. PROCEDURE FOR PROVING STANDING

Initially, we must decide what factors a petitioner must prove in order to establish

standing. The standing requirements are vaguely set forth in RCW 26.26A.440(3). This

section provides:

(3) The following rules govern standing of an individual who claims to be a de facto parent of a child to maintain a proceeding under this section:

(a) The individual must file an initial verified pleading alleging specific facts that support the claim to parentage of the child asserted under this section. The verified pleading must be served on all parents and legal guardians of the child and any other party to the proceeding.

(b) An adverse party, parent, or legal guardian may file a pleading in response to the pleading filed under (a) of this subsection. A responsive pleading must be verified and must be served on parties to the proceeding.

(c) Unless the court finds a hearing is necessary to determine disputed facts *material to the issue of standing*, the court shall determine, based on the pleadings under (a) and (b) of this subsection, whether the individual has *alleged* facts sufficient to satisfy by a preponderance of the evidence the requirements of subsection (4)(a) through (g) of this section. If the court holds a hearing under this subsection, the hearing must be held on an expedited basis.

RCW 26.26A.440 (emphasis added).

The seven factors that a petitioner must prove for final determination of de facto parentage are set forth in subsections (4)(a) through (g) of the same statute:

In a proceeding to adjudicate parentage of an individual who claims to be a de facto parent of the child, the court shall adjudicate the individual who claims to be a de facto parent to be a parent of the child if the individual demonstrates by a preponderance of the evidence that:

(a) The individual resided with the child as a regular member of the child's household for a significant period;

(b) The individual engaged in consistent caretaking of the child;

(c) The individual undertook full and permanent responsibilities of a parent of the child without expectation of financial compensation;

(d) The individual held out the child as the individual's child;

(e) The individual established a bonded and dependent relationship with the child which is parental in nature;

(f) Another parent of the child fostered or supported the bonded and dependent relationship required under (e) of this subsection; and

       (g) Continuing the relationship between the individual and the child is
      in the best interest of the child.

RCW 26.26A.440.

The requirements for standing under RCW 26.26A.440(3) are ambiguous. Under

subsection (3)(a), the verified petition must include facts to support the claim to

parentage. If the responsive pleading raises disputed facts "material to the issue of

standing," then the court determines if the petitioner has "alleged" facts sufficient to

satisfy by a preponderance of the evidence the seven factors set forth in subsection (4).

The statute does not clarify whether "facts material to the issue of standing" are the same

facts required to prove de facto parentage. RCW 26.26A.440(3)(c).

This issue was recently addressed in *J.D.W.* where Division One of this court

considered the factors necessary to find standing. The court noted that standing was a

threshold matter that the trial court must determine based on the initial pleadings. 14 Wn.

App. 2d at 399. To be legally sufficient, the initial pleading must allege facts sufficient

to satisfy each of the seven elements of de facto parentage regardless of whether there are

disputed facts. *Id*. at 400. But when facts are disputed, the court need only decide facts

that are material to the issue of standing.

In deciding which facts were material to a determination of standing, the court

rejected the respondent's argument that standing required the petitioner to prove each of

the seven elements by a preponderance of the evidence. Such a reading would render the

8

statute redundant and fails to recognize the distinction between the seven factors listed in subsection (4) and the term "facts material to the issue of standing" used in subsection (3). *Id*. at 402-04. On the other hand, the court also rejected the petitioner's argument that standing only required allegations sufficient to support each element without proving any element. Such an interpretation would render meaningless that portion of subsection (3)(c) that requires disputed facts to be determined at an expedited hearing. *Id*. at 402.

Instead, the court concluded that facts material to standing required the petitioner to make a threshold showing "that he or she unequivocally parented the child as part of the child's family unit and that a legal parent consented to and fostered a parent-child relationship between the petitioner and the child." *Id*. at 409. These two factors balanced the concerns recognized by our Supreme Court in *L.B.* of protecting a parent's constitutionally protected interest in the care and custody of their children while preserving the child's interest in maintaining relationships with those who have unequivocally parented them. *Id*.

Three months later, Division Two similarly held that the preliminary finding of standing for a de facto parentage action requires the court to determine whether the petition sets forth sufficient facts to support each of the seven statutory elements. *In re Parentage of L.J.M.*, 15 Wn. App. 2d at 596. This threshold review assumes the truth of the petition "unless there are disputed facts material to the issue of standing." *Id*. at 596-97. While citing Division One's decision in *J.D.W.*, the court in *L.J.M.* did not adopt

9

*J.D.W.*'s holding. Instead, the court found that a petition meets the requirement for standing by alleging facts sufficient to demonstrate each of the seven statutory elements. *Id*. at 594. If the pleadings raise disputed facts material to the issue of standing, the dispute is resolved at an expedited hearing. *Id*.

As the analysis in *J.D.W.* and *L.J.M.* suggests, the statutory requirements to prove standing in a de facto parentage are ambiguous. We note that the Washington statute on standing differs from the uniform act in one significant manner. The comments to the uniform act note that the petitioner must prove the statutory requirements by a preponderance of the evidence at the preliminary standing stage. *See* 9B U.L.A. at 80-81. But at the final hearing, the uniform act requires the petitioner to prove the seven factors by "clear-and-convincing evidence." *Id*. While the uniform act requires proof of all seven factors at both hearings, the burden of proof at each hearing is different.

On the other hand, the Washington statute is different from the uniform act because it only requires proof at the final hearing by a preponderance of the evidence. RCW 26.26A.440(4). Our state legislators have created a redundancy by lowering the burden of proof at the final hearing without addressing the necessary proof at the preliminary standing hearing. It is not clear whether this was intentional. However, it is clear that the uniform act intended all seven factors to be proved at each hearing.

We must decide whether to follow the holding in *J.D.W.* or *L.J.M.*, or devise a third standard for determining standing. While we recognize that the holding in *J.D.W.* is

a more nuanced approach to the issue of standing, we conclude that the holding in *L.J.M.* comports with the language of the statute and the legislative intent. Thus, we adopt the decision of *L.J.M.* and hold that the petition must allege facts sufficient to demonstrate each of the seven statutory factors. If the petitioner's allegations are legally insufficient to demonstrate standing, the petition shall be dismissed. Any disputed factors must be proved at an expedited hearing.

2. "HOLDING OUT" A CHILD AS ONE'S OWN.

In this case, the superior court commissioner denied Walker's petition at the preliminary standing hearing after finding that Walker failed to present evidence that she held E.L out as her own child. Since this is one of the seven factors set forth in RCW 26.26A.440(4), and since E.L.'s mother contested this factor, Walker was required to prove this factor by a preponderance of the evidence. The commissioner found that Walker's evidence was insufficient because she never claimed that E.L. was her biological child. On appeal, Ms. Walker contends that holding a child out as one's own does not require a petitioner to lie. Instead, she maintains that "holding out" requires the petitioner to perform all of the functions of a parent that would distinguish the petitioner from a nonparent caregiver. The term's meaning and definition is a question of statutory interpretation that we review de novo. *J.D.W.*, 14 Wn. App. 2d at 396. Our primary goal is to determine the legislative intent. *Id.* at 396-97.

11

The term "holding out" is not defined by statute. The parties do not suggest a working definition of the term. While Birch argues that the term should be given a literal and narrow reading, Walker suggests that we apply a fluid definition that considers the unique circumstances of each case. Neither proposal promotes the purpose of the statute while providing consistent application.

A few of our prior decisions have found evidence of holding out without defining the term. In *L.J.M.*, the trial court found the allegations deficient because the petitioner was the child's step-father. The trial court had concluded that performing parenting functions as a stepparent does not constitute holding a child out as one's own. On appeal, the *L.J.M.* court rejected this conclusion, noting that nothing in the statute's language requires the petitioner to hold the child out as their genetic child. *L.J.M.*, 15 Wn. App. 2d at 600. The trial court's overly narrow definition of "holding out" "would preclude almost all stepparents from attaining de facto parent status unless the stepparent falsely claimed that they were "the biological parent. Such a result would be inconsistent with the purpose of RCW 26.26A.440." *Id*. Instead, the requirement to hold oneself out as a parent can be satisfied "even if it is known that the petitioner is the child's stepparent." *Id*. at 601.

In *J.D.W.*, the court recognized that a preliminary finding of standing will include "whether the petitioner held the child out as his or her own (so as to rule out relationships that are not parental in nature)." *J.D.W.*, 14 Wn. App. 2d at 413. The court went on to

find standing because the petitioner unequivocally parented the child as part of the child's family unit. *Id.*

While the statutory element of "holding out" was not one of the common law elements of de facto parenting established by our Supreme Court in *L.B.*, the court did find that "recognition of a de facto parent is 'limited to those adults who have fully and completely undertaken a permanent, unequivocal, committed, and responsible parental role in the child's life.'" *L.B.*, 155 Wn.2d at 708 (quoting *C.E.W.*, 845 A.2d at 1152).

Similarly, the comment to the Uniform Parentage Act, § 609 comment clarifies the purpose of the statutory language:

> Under this new section, an individual who has functioned as a child's parent for a significant period such that the individual formed a bonded and dependent parent-child relationship may be recognized as a legal parent. This provision ensures that individuals who form strong parent-child bonds with children with the consent and encouragement of the child's legal parent are not excluded from a determination of parentage simply because they entered the child's life sometime after the child's birth.

9B U.L.A. at 80-81.

With this statutory intent in mind, and without adopting an exclusive definition of the term, we conclude that holding a child out as one's own is to assert a status as a parent or parent-like as opposed to a caretaker. Whereas a person who holds themselves out as a parent will make major decisions for a child, such as education, extra-curricular activities, religion, health care, and residence, a caretaker will not. Holding a child out as one's own does not require a petitioner to lie and claim a biological connection to the

13

child. Instead, it requires that one holds themself out as a person responsible for parenting the child.

In this case, the commissioner found that Walker did not hold herself out as E.L.'s parent because she did not tell others that she was E.L.'s parent. Similar to the trial court's decision in *L.J.W.*, the commissioner in this case applied an overly narrow definition of "holding out" that does not promote the statutory purpose. The statute, which contemplates that a person may become a de facto parent even if they enter the child's life after the child is born, does not require a petitioner to lie and claim to be a biological parent. Walker can meet the requirement of "holding out" even if it is known that she is not the child's parent.

### 3. CONSENT TO A PARENT-LIKE RELATIONSHIP WITH CHILD

As an alternative basis for affirming the dismissal on appeal, Birch contends that Walker failed to prove consent. Birch argues that she did not consent to or foster a parent-like relationship between Walker and E.L. The commissioner did not enter findings on this factor.

To prove standing, the petitioner must demonstrate that "[a]nother parent of the child fostered or supported the bonded and dependent relationship required under (e) of this subsection." RCW 26.26A.440(4)(f). This requirement saves the de facto parenting statute from infringing on the constitutional rights of parents.

in contrast to [Petitioner's] fears that "teachers, nannies, parents of best friends, . . . adult siblings, aunts, [ ] grandparents," and every "third-party . . . caregiver" will now become *de facto* parents, Pet. for Review at 12, 15, attaining such recognition should be no easy task. Critical to our constitutional analysis here, a threshold requirement for the status of the *de facto* parent is a showing that the legal parent "consented to and fostered" the parent-child relationship. . . . The State is not interfering on behalf of a third party in an insular family unit but is enforcing the rights and obligations of parenthood that attach to *de facto* parents; a status that can be achieved only through the active encouragement of the biological or adoptive parent by affirmatively establishing a family unit with the *de facto* parent and child or children that accompany the family. In sum, we find that the rights and responsibilities which we recognize as attaching to *de facto* parents do not infringe on the fundamental liberty interests of the other legal parent in the family unit.

*L.B.*, 155 Wn.2d at 712 (footnote and citations omitted); *see also In re Custody of B.M.H.*, 179 Wn.2d 224, 241, 315 P.3d 470 (2013) ("The de facto parentage doctrine incorporates constitutionally required deference to parents by requiring that the biological or legal parent consent to and foster the parent-like relationship.").

In this case, Birch argues that she did not consent to Walker's parent-like relationship with E.L. Instead, she contends that Walker became E.L.'s legal guardian through court intervention. Birch argues that guardian actions cannot form the basis for consent since they are not intended to permanently deprive a parent of the care and custody of the child. Instead, such actions are intended to confer temporary status on the guardian because the child has no suitable legal parent. While Birch is correct about the temporary status of legal guardians, the Supreme Court has previously found that

15

similarly situated foster parents can qualify as de facto parents if they meet all of the requirements. *In re Custody of A.F.J.*, 179 Wn.2d 179, 188, 314 P.3d 373 (2013).

In this case, Walker contends that not only did Birch initially consent to the guardianship arrangement, but after Birch became capable of parenting, it took another six years before she took steps to end the guardianship and regain custody of E.L. During the time that Birch was capable of parenting but chose not to, Walker performed all of the functions of a parent and E.L. remained in Walker's sole custody.

We hold that if true, these allegations would be legally sufficient to prove consent under the de facto parenting statute. Like the court's holding in *A.F.J.*, Walker's status as E.L.'s guardian does not preclude her from being declared E.L.'s de facto parent. If Birch resolved her disabling condition but chose not to re-engage with the child, her inaction necessarily fostered the continuing parent-like relationship between E.L. and Walker. *See In re Parentage of J.B.R.*, 184 Wn. App. 203, 213, 336 P.3d 648 (2014) (noncustodial parent who voluntarily absents himself from child's life consents and fosters a parent-like relationship between his child and the petitioner).

We reverse the superior court's order dismissing Walker's petition for de facto parentage and remand for a hearing to determine if Walker meets her burden of proving all seven factors necessary to show standing. At this hearing, the court can apply the procedure and definitions we set forth above. We deny Birch's request for attorney fees

16

No. 37690-7-III
*Walker v. Riley, et al*

as she has failed to devote a section in her brief sufficient to justify an award of fees

under RCW 26.26A.510 or RAP 18.1(b).

_____
Staab, J.

WE CONCUR:

_____
Fearing, J.

_____
Lawrence-Berrey, J.

17