IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Parentage of J.L., | ) | |
| | ) | No. 38579-5-III |
| DOUGLAS FRANKLIN LAPLANTE, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| CAMERON LABRECQUE, | ) | |
| | ) | |
| Respondent. | ) | |

FEARING, J. — We again review the sufficiency of a petition for de facto parentage

under Washington's new version of the Uniform Parentage Act (UPA), ch. 26.26A RCW.

We find the petition of Doug LaPlante for de facto parentage of his grandson adequate

and remand for further proceedings.

FACTS

This appeal concerns the custody of and care for the minor James, a pseudonym.

We glean the facts from declarations filed by biological father Cameron LaBrecque,

No. 38579-5-III,
*In re the Parentage of J.L.*

maternal grandfather Doug LaPlante, and maternal grandmother Eileen Frances.
LaPlante seeks de facto parentage on his and his wife's behalf.

Cameron LaBrecque and Elena LaPlante (Elena) begot James in September 2015
in Spokane. Elena is the daughter of Doug LaPlante and Eileen Frances. In January
2017, Elena left James with her parents, departed Spokane, and has maintained limited
contact with James since. LaPlante and Frances cared for James after Elena's departure.
Cameron LaBrecque served in the Army until May 2019. Cameron admits that, while on
deployment, he voluntarily placed James in the care of LaPlante and Frances. LaBrecque
was deployed overseas for ten months between October 2017 and August 2018.

After Cameron LaBrecque's deployment ended, he consented to James living with
Doug LaPlante and Eileen Frances. LaBrecque testifies that he wanted to avoid
"traumatiz[ing] [James] by ripping him from the home he had known during
[LaBrecque's] deployment." LaBrecque therefore "agreed upon a schedule which would
ease [him] back into [James'] life." Clerk's Papers (CP) at 18-19.

According to the grandparents, they cared for James six days and nights every
week. They also referred to James as "'our boy'" and "'our child,'" and James called
them "[m]imi" and "[p]apa." CP at 53, 79. LaPlante and Frances scheduled medical and
dental appointments for James and enrolled him in pre-school and elementary school.

In February 2020, Cameron LaBrecque grew dismayed when he ascertained that Doug LaPlante and Eileen Frances had claimed the federal child tax credit on account of their care for James. In July 2021, LaBrecque learned that a relative of the grandparents suffered a medical emergency at their home. LaBrecque surmised that the relative suffered a drug overdose and that James witnessed the overdose. The grandparents dispute this accusation. According to LaPlante and Frances, the relative suffered a heat-related injury. After hearing about the incident, LaBrecque removed James from the grandparents' residence and, contrary to the grandparents' wishes, refused to return him to their care.

## PROCEDURE

Doug LaPlante filed a petition for de facto parentage of James. Eileen Frances never signed the petition for de facto parentage, although LaPlante named her as a petitioner in the court caption. LaPlante signed the petition on his and his wife's behalf. Because LaPlante is not a licensed attorney, he lacked authority to represent or sign on behalf of Frances. Frances also did not sign the notice of appeal. We proceed as if LaPlante is the only petitioner and appellant.

Doug LaPlante completed standard form FL parentage 341 as his petition. Part 12 of the form asked petitioner to describe when and how he and his wife told others that they acted as James' parents or interacted with others as the child's parents. In response, LaPlante wrote "Child care providers and others will submit sworn statements regarding

3

Petitioners' parental relationship with [James]." CP at 9. No sworn statements appear in the record on review, but LaPlante appends letters to his appellate reply brief that he asserts supported his petition. An appendix to an appellate briefing "may not include materials not contained in the record on review without permission from the appellate court." RAP 10.3(8). Thus, we do not consider the letters.

Part 14 of the de facto FL parentage 341 form asked petitioner to describe how "[a]t least one of the child's parents fostered or supported [their] relationship with the child." CP at 9. Doug LaPlante responded:

> [James's] mother, our daughter, Elena left [James] with us when she took employment out of the State of Washington in November 2016. She has since had virtually no involvement with [James] since that time, other than occasional phone contact or messaging. Elena has not had physical contact with [James] since April 2017, Cameron [LaBrecque] has shared an amica[b]ly agreed to Parenting Plan and Residential Schedule with Petitioners' [sic] Doug and Eileen since October 2016. Cameron had 1 overnight visit per week with [James]. Expanded to 2 nights in 2020.

CP at 9.

Cameron LaBrecque opposed the petition for de facto parentage. The superior court dismissed the petition. In its order after review of the petition for de facto parentage, the court checked the following standard language:

> Based upon the petition and response, by a preponderance of the evidence (more likely than not):
> Petitioner has **not** met the standard for the case to go forward. The *Petition for De Facto Parentage* should be dismissed.

CP at 110. The superior court handwrote the following words:

No. 38579-5-III,
*In re the Parentage of J.L.*

> Based on the Petition and Response, it does not appear the Petitioners held themselves out as "parents" of the child, nor did the father consent to an ongoing, permanent, parent like relationship.

CP at 110.

## LAW AND ANALYSIS

### De Facto Parentage

We must decide whether Doug LaPlante's petition for de facto parentage should proceed to a trial. The de facto parentage doctrine first arose under Washington common law. *In re Parentage of L.B.*, 155 Wn.2d 679, 707, 122 P.3d 161 (2005). At common law, the four elements courts considered were:

> (1) the natural or legal parent consented to and fostered the parent-like relationship,
> (2) the petitioner and the child lived together in the same household,
> (3) the petitioner assumed obligations of parenthood without expectation of financial compensation, and
> (4) the petitioner has been in a parental role for a length of time sufficient to have established with the child a bonded, dependent relationship, parental in nature.

*In re Parentage of L.B.*, 155 Wn.2d 679, 708 (2005).

In 2019, the Washington Legislature codified the requirements for de facto parentage as part of an update to the UPA, chapter 26.26A RCW. The section of the UPA addressing de facto parentage actions is RCW 26.26A.440. Similar to the common law pronouncement, the statute aims to ensure that individuals who form strong parent-child bonds with children with the encouragement of the child's legal parent are not

5

excluded from a determination of parentage simply because they entered the child's life

after the child's birth. *In re Parentage of J.D.W.*, 14 Wn. App. 2d 388, 404, 471 P.3d 228

(2020).

Under the UPA, an individual may file a petition for de facto parentage over a

living minor. RCW 26.26A.440. The substantive core of the statute declares:

> (4) In a proceeding to adjudicate parentage of an individual who claims to be a de facto parent of the child, the court shall adjudicate the individual who claims to be a de facto parent to be a parent of the child if the individual demonstrates by a preponderance of the evidence that:
> (a) The individual resided with the child as a regular member of the child's household for a significant period;
> (b) The individual engaged in consistent caretaking of the child;
> (c) The individual undertook full and permanent responsibilities of a parent of the child without expectation of financial compensation;
> (d) The individual held out the child as the individual's child;
> (e) The individual established a bonded and dependent relationship with the child which is parental in nature;
> (f) Another parent of the child fostered or supported the bonded and dependent relationship required under (e) of this subsection; and
> (g) Continuing the relationship between the individual and the child is in the best interest of the child.

Cameron LaBrecque only contests factors (d) and (f).

Doug LaPlante's appeal requires a review of the procedure adopted by the

legislature for a de facto parentage action in addition to the substance of the action. The

UPA prescribes a unique procedure for a de facto parentage action. RCW 26.26A.440

proclaims:

6

> (3) The following rules govern *standing* of an individual who claims to be a de facto parent of a child to maintain a proceeding under this section:
>
> (a) The individual must file an initial verified pleading alleging specific facts that support the claim to parentage of the child asserted under this section. . . .
>
> (b) An adverse party, parent, or legal guardian may file a pleading in response to the pleading filed under (a) of this subsection. . . .
>
> (c) Unless the court finds a hearing is necessary *to determine disputed facts* material to the issue of standing, the court shall determine, *based on the pleadings under (a) and (b)* of this subsection, *whether the individual has alleged facts sufficient to satisfy by a preponderance of the evidence* the requirements of subsection (4)(a) through (g) of this section. If the court holds a hearing under this subsection, the hearing must be held on an expedited basis.

(Emphasis added.)

We note an ambiguity, if not an inconsistency, in RCW 26.26A.440(3)(c). The first highlighted clause in the subsubsection suggests that the court must send the proceeding to an evidentiary hearing if the pleadings show any material dispute of facts. Such a standard echoes a summary judgment standard, wherein the court accepts the testimonial facts presented by the petitioner as verities. The second and third italicized clauses suggest that the superior court may weigh the testimony of the petitioner against the testimony of the respondent when discerning whether to grant the petitioner a trial. The two clauses reference the court weighing the facts after reviewing both sides' declaration evidence. But then the third clause incongruously directs the superior court to weigh only the facts alleged by the petitioner. In light of this ambiguity, we follow our precedence, in *Walker v. Riley*, 19 Wn. App. 2d 592, 602, 498 P.3d 33 (2021), that "any

dispute of the facts necessary to demonstrate standing will be resolved at an expedited [evidentiary] hearing."

This court reviews de novo whether a petition provided sufficient facts to satisfy the statutory requirements for standing. *In re Parentage of L.J.M.*, 15 Wn. App. 2d 588, 596, 476 P.3d 636 (2020). Thus, we afford the superior court no deference.

The superior court dismissed Doug LaPlante's petition on two grounds. First, LaPlante and Eileen Frances failed to hold themselves out as the parents of James. Second, Cameron LaBrecque withheld consent to the consummation of a parent-child relationship between the grandparents and James. We conclude that LaPlante presented sufficient facts of the grandparents' holding themselves out as parents. We further conclude that the superior court misread RCW 26.26A.440(4)(f). The statutory subsection does not require explicit consent by both natural parents, only a fostering of the relationship by one of the parents. LaPlante presented sufficient facts of fostering, if not consent, by the mother.

Holding Out as Parent

The requirement that petitioner holds out the child as his or her own shares no direct analogue with the common law elements of de facto parentage. We again follow our ruling in *Walker v. Riley*, 19 Wn. App. 2d 592 (2021). The element of "'holding out'" a child as one's own does not require petitioners to claim that they are biological parents. *Walker v. Riley*, 19 Wn. App. 2d 592, 595 (2021). The petitioners need not

8

prevaricate to others by claiming biological parentage or any biological connection to the child. *Walker v. Riley*, 19 Wn. App. 2d 592, 605 (2021). Instead, the element requires the petitioner to prove that he or she held himself or herself out to the public in a parental capacity as opposed to a caretaker function. *Walker v. Riley*, 19 Wn. App. 2d 592, 595 (2021). People who hold themselves out as parents will make major decisions for a child, such as education, extra-curricular activities, religion, health care, and residence, while a caretaker will not. *Walker v. Riley*, 19 Wn. App. 2d 592, 604-05 (2021). The petitioner fulfills the holding out element even if others knew that he is not the child's biological parent. *Walker v. Riley*, 19 Wn. App. 2d 592, 605 (2021).

Doug LaPlante's petition asserted that he and his wife referred to James as "our son" and "our boy" and that James referred to them using parental monikers. The grandparents made major decisions while James resided in their care, including medical and educational decisions. The grandparents claimed James as their child for federal tax purposes. These alleged facts suffice for the holding out element.

Fostering the Relationship

In his appeal brief, Cameron LaBrecque repeatedly contends that a petitioner must show both consent to and the fostering of the parent-child relationship by both biological parents. He cites no authority for this purported two-prong element or four-prong if one multiplies the two elements by two because of two parents.

At common law, de facto parentage required a showing that "the natural or legal parent *consented to and fostered* the parent-like relationship." *In re Parentage of L.B.*, 155 Wn.2d 679, 708 (2005) (emphasis added). In the UPA, the Washington Legislature inserted no language requiring "consent." The legislature instead required a showing that "[a]nother parent of the child *fostered or supported* the bonded and dependent relationship." RCW 26.26A.440(f) (emphasis added). Note also that the legislature's language allows "[*another*] parent" to foster the relationship, RCW 26.26A.440(4)(f) (emphasis added), while the common law rule specified "*the* natural or legal parent" must consent. *In re Parentage of L.B.*, 155 Wn.2d 679, 708 (2005) (emphasis added). Finally, the statutory subsubsection only requires that one, not both, natural parents foster the relationship.

In *Walker v. Riley*, 19 Wn. App. 2d 592, 595 (2021), we held that when a legal parent, who was then capable of parenting, voluntarily chooses to absent herself from the child's life while the child rests in the petitioners' sole custody, the parent necessarily consents to and fosters the parent-like relationship between the petitioner and the child. A legal parent may foster a continuing parent-like relationship through inaction. *Walker v. Riley*, 19 Wn. App. 2d 592, 607 (2021).

Elena LaPlante left James with Doug LaPlante and Eileen Frances in January 2017 and then departed from James' life. Thus, at least one parent fostered the parent-child relationship between James and his grandparents. A question of fact also exists as to

10

whether Cameron LaBrecque fostered the relationship.  LaBrecque allowed James to live six days a week at James' grandparents' residence and for them to assume predominant parental roles for several years of James' early life.  During this time, LaPlante and Frances made those decisions for James that a parent would render.  LaBrecque permitted the grandparents to function as the main parental figures even after finishing his military deployment.

Eileen Frances' Party Status

To repeat, although the trial court frequently addressed Eileen Frances as a party to the proceedings, Frances never signed the petition for de facto parentage.  Doug LaPlante may not sign pleadings on Frances' behalf.  On remand, the trial court may determine whether Frances wishes to join LaPlante in the petition for de facto parentage by her signing the petition and further pleadings.

CONCLUSION

We remand to the superior court for further proceedings consistent with this opinion, including a determination of whether Eileen Frances wishes to join the petition and the conducting of an expedited evidentiary hearing on the petition for de facto parentage.

11

No. 38579-5-III,
*In re the Parentage of J.L.*


A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.


_____Fearing, J._____
Fearing, J.

WE CONCUR:

_____Lawrence-Berrey, A.C.J._____
Lawrence-Berrey, A.C.J.

_____Staab, J._____
Staab, J.