IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Parentage: | ) | |
| | ) | No. 38129-3-III |
| KEVIN LINHART | ) | |
| ERIN LINHART, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | UNPUBLISHED OPINION |
| v. | ) | |
| | ) | |
| CARMEN FOWLER | ) | |
| ARVIN CARMEN, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Carmen Fowler, the biological mother of Mark, appeals the superior court's declaration of Erin and Kevin Linhart as de facto parents of the boy. Because Erin Linhart, the de facto mother of Mark, has since died and because the superior court based its award of de facto parentage primarily on the relationship between Mark and Erin Linhart, we remand for the superior court to enter findings of de facto parentage targeted directly to Kevin Linhart and to entertain further testimony at the court's discretion.

## FACTS

Carmen Fowler and Arvin Carmen beget Mark, a pseudonym, in August 2012. The father Arvin Carmen currently serves a long prison sentence and has never been

present in Mark's life nor participated in this legal proceeding. Mother Carmen Fowler experiences lengthy drug and alcohol abuse.

At Mark's birth, Carmen Fowler named her friend, Erin Linhart, Mark's godmother. Fowler thereafter regularly delivered Mark to Linhart's home for care on weekends. When Fowler struggled with substance abuse, Mark lived primarily with Fowler's mother, Robin Brown. Brown often permitted Mark to stay with Erin Linhart and her husband, Kevin, overnight. Fowler knew that Mark sometimes stayed at Erin and Kevin Linhart's home.

In 2015, Carmen Fowler exerted efforts to spend more time with Mark. We do not know the extent of the success of the efforts. She relapsed in substance abuse in October 2015.

Kevin Linhart has a history of criminal activity and domestic violence. He has not engaged in either since 2011.

PROCEDURE

Erin and Kevin Linhart filed a petition for de facto parentage of Mark. In turn, Carmen Fowler submitted a motion to dismiss the petition. The motion attached a felony judgment and sentence showing Kevin Linhart's convictions for unlawful imprisonment and malicious mischief, with both convictions carrying a domestic violence label. The motion also attached a 2011 protection order entered against Kevin Linhart. The record does not reflect whether the superior court ruled on the motion to dismiss.

2

No. 38129-3-III,
*In re Parentage of M.F.*


A superior court commissioner presided over a threshhold hearing of whether the Linharts had established standing to proceed to a full hearing on the merits of the petition for de facto parentage. During the hearing, the court commissioner commented regarding other cases involving custody of Mark:

> The Court has reviewed the third-party custody file as I said at the last hearing. I reviewed parts of it, not the whole thing. I reviewed parts of one of the petitions for termination, not both.

Clerk's Papers (CP) at 348.

> As the Court said at the outset of the hearing, I have had time to review this file; parts of the non-parental custody file as well as some parts of one of the petition to terminate files. In doing so, I did note a couple of things.
> One, Ms. Fowler did move I believe in 2015 to modify the non-parental custody matter. That was, at the time, before our supreme court changed the—either, well, they changed the law because before that the statute said to change placement under a non-parental custody when you claim detriment there has to be detriment in the home of the non-parental custodian.
> When Ms. Fowler brought her petition, at that time, this Court actually heard it. I must have been a pro tem at the time. I heard that matter and decided that there was not detriment in Ms. Brown's home, and I did not do a non-parental or I did not change placement. I did order that the parties attempt mediation. Ms. Fowler had been doing better at the time and that just outright denying her contact with [Mark] was not in [Mark's] best interests. I think I talked about the difference at that hearing, a major modification and a minor modification and what was appropriate and what wasn't.
> Be that as it may, there's been several other petitions to modify filed, and there, then Commissioner Anderson now Judge Anderson, found adequate cause for both parties. The Linharts were able to intervene. She allowed them to intervene in the non-parental custody matter since [Mark] had been placed with them. I mean it started out with [Mark] being placed

3

> with Ms. Brown under the non-parental custody and Ms. Fowler consenting to that placement.
>
> This case is all messy. Not due to anyone's fault here, I'm not saying that, but just where [Mark] has been. Because when, if I look at what the Linharts say and a lot of third-parties say in this matter, when [Mark] was born the Linharts were involved in his life really from day one. It might not have been as a primary parent or a primary custodian, but a lot of people have given declarations saying that he was at their house every Thursday to Sunday.

CP at 364-66.

> [Mark] has had visits with [Carmen Fowler] for two years, and I know Judge Anderson just expanded visits under the non-parental case and that is the—because she just did that after hearing some information as well. She's had these cases, not this one but the non-parental for a while, I'm adopting what she did last week as the temporary order in this case. I'm not changing what she's done. I know trial is going to come up on these matters, and the parties will be able to move forward in that manner. I'm glad that Judge Anderson is assigned to this case since she's had consistent contact with it over the years.

CP at 371-72.

The court commissioner ruled that Erin and Kevin Linhart had established each element of de facto parentage for purposes of standing. The commissioner's ruling mirrored the allegations advanced in the Linharts' petition.

Carmen Fowler filed a motion to revise the court commissioner's ruling, arguing that the commissioner erred in entering findings of fact related to the standing determination. The superior court did not rule on the motion until after the conclusion of the full evidentiary de facto parentage hearing, at which time the court ruled that the commissioner's findings were extraneous.

4

No. 38129-3-III,
*In re Parentage of M.F.*

After the evidentiary trial, the superior court granted Erin and Kevin Linhart de facto parentage of Mark. At the same time, the court ruled that Carmen Fowler was fit to parent her son.

A finding of de facto parentage requires a finding that an existing parent fostered and supported the bonded and dependent relationship between the child and the de facto parent. In its oral ruling, the superior court expounded:

> The highly contested factor was section (f) whether another parent of the child fostered or supported the bonded and dependent relationship required under section (e). Now, whether that was supported and fostered by Ms. Fowler is a very contested issue that I heard lots of testimony about. I'm starting from the standpoint, first of all, of the actual wording of the statute, that a parent has to foster and support that bonded and dependent relationship.
>
> From the standpoint of a parent, Ms. Fowler, fostering that bonded and dependent relationship, I have no doubt that Ms. Fowler supported and fostered a bonded relationship between Mr. and Mrs. Linhart and [Mark]. Ms. Fowler chose Erin Linhart to be a godparent. That is a moniker and a denomination that shows an intent for something more than just this is a person that you will know in your life.
>
> A godparent, whether you believe in the spiritual connotation of a godparent, a religious connotation, or simply recognizing that, hey, you are a significant person in my life and I want to elevate you in my child's life, I do find that that's compelling. Ms. Fowler asked for and encouraged Ms. Linhart, both before and after she was married to Kevin Linhart, to provide child care, to be involved in his life and his growth.
>
> Ms. Fowler, when she recognized that she had addiction issues and could not be the parent that her child needed, she did recognize and foster that others needed to step in and help her with that. So, from the standpoint of fostering a bonded relationship, I think that was very clear. Whether she fostered a dependent relationship I think was more of a crux.
>
> Did Ms. Fowler intend that this relationship would be dependent in the nature of a parent-child relationship? Again, I look to the fact that Ms. Fowler recognized she could not parent her child at the time that Mr. and

5

Mrs. Linhart were introduced significantly into his life. The relationship was a dependent relationship, because as a parent you know someone has to be the responsible entity for making those decisions for your child.

A three-year-old, a four-year-old is a dependent child. They do look to an adult to provide all of that guidance and structure. While Ms. Fowler desired to be involved in her child's life, she did recognize that at that period of time he needed someone to provide that stability, oversight, and guidance for him. It wasn't until Ms. Fowler got sober the most recent time that she really started exercising her objections towards that relationship. So, from the standpoint of the criteria in the statute, I do think that I have a parent who fostered that dependent and bonded relationship.

The other way I looked at this case, and I do want to make sure this is also part of the record, is that uniquely to this case Ms. Robin Brown did obtain custody of the child. If I were to look at the statute from the standpoint of rather than the term parent, if it were a custodian or the person with the parental authority, that would be Robin Brown.

Because, again, we have a third-party custody where for a period of time Ms. Fowler did not have the ability to make those parental decisions. Ms. Fowler could not be the entity deciding who and where [Mark] was going. That was up to Robin Brown. And Ms. Brown, I want to echo, to her credit, she balanced her grandchild's needs and her daughter's needs and very much wanted Ms. Fowler to maintain a sober lifestyle.

At the point that Ms. Brown gave custody, physical custody, and encouraged the Linharts to be a permanent part of [Mark's] life, Ms. [Fowler] had suffered three relapses in a period of about two-and-a-half years. . . . At that point in time, based on history, it was impossible to look ahead and know that that 2017 sobriety date would be a sobriety date that stuck for Ms. Fowler. So, from the standpoint of the several years that Ms. Brown had parented her grandson, and as the custodian, I find that that also gave her the authority to be the entity to foster and support a bonded and dependent relationship. I have no doubt, the evidence was very clear that Ms. Brown asked for, needed the assistance to parent the child at that time. And she, with her authority as the guardian, fostered that relationship.

Report of Proceedings (RP) at 458-61.

In its written findings of fact and conclusions of law about de facto parentage, the

superior court wrote:

6

The Court found that Ms. Fowler no doubt supported the relationship. Ms. Fowler chose Mrs. Linhart to be the child's god-parent, recognizing her as a significant person in the child's life. Ms. Fowler would ask the Linharts to provide childcare for the child. When Ms. Fowler recognized she was struggling with addiction issues, she recognized and fostered others to help care for the child.

The Court also found Ms. Fowler fostered the dependent relationship. As a parent, Ms. Fowler recognized when she was unable to parent, the Linharts had already been significantly introduced to the child. Ms. Fowler knew the child was dependent because as a parent, she recognized someone has to be the entity to make the caretaking decisions for her child and a child of three (3) or (4) years is clearly dependent. The Court found that Ms. Fowler did not begin exercising her objections towards the relationship until her most recent stint of sobriety.

The Court also found unique to this case, that Ms. Fowler's mother, Robin Brown, who had obtained custody of the child with parental authority also foster[ed] and support[ed] the relationship with the Linharts. She encouraged the Linharts to be parents of the child and a large part of the child's life during a time that Ms. Fowler was struggling with her addiction. During that time, it was impossible, based on history, to look ahead and know whether that sobriety would stick. The Court found that Ms. Brown also had authority to foster and support the relationship, and that [she] did in fact do so.

CP at 381-82.

The superior court signed a parenting plan that gave primary custody of Mark to Erin and Kevin Linhart and afforded Carmen Fowler custody every other weekend and every Thursday night thru Friday morning. In a proposed parenting plan, the Linharts had urged the court to find that Fowler had a history of substance abuse. The court entered a finding, under RCW 26.09.191, of past substance abuse by Fowler and noted "Fowler has a long-term problem with drugs, alcohol or other substances that gets in the way of his/her ability to parent." CP at 404. The superior court entered no other findings

7

limiting any parent's custody time under RCW 26.09.191.  The court noted that, despite

the finding of past substance abuse against Fowler:

> The [RCW 26.09.191] restrictions . . . do not have to lead to
> restrictions in parenting time if I don't find that there is a current nexus that
> would warrant that.  The statute also indicates that unless I can find a
> relationship between those provisions and current parenting, that it doesn't
> necessarily lead to restrictive time.  And I don't find that there is currently a
> basis for restricted time.

RP at 468.  The court based Mark's residential schedule on his young age and the desire

to avoid disruption to Mark's weekly schedule and school schedule while maintaining

consistent and frequent contact with both sets of parents.

Carmen Fowler appeals the finding of de facto parentage and the parenting plan.

Following initiation of the appeal, Erin Linhart unfortunately died.

## LAW AND ANALYSIS

On appeal, Carmen Fowler challenges the superior court commissioner's initial

ruling that Erin and Kevin Linhart possessed standing to proceed to a full hearing on de

facto parentage.  She also assigns error to the court commissioner's evidentiary rulings,

the court commissioner's review and mention of evidence presented in other proceedings,

and the superior court's failure to entertain revision of the court commissioner's ruling on

standing.  Fowler also challenges the superior court's parenting plan, assuming we affirm

the ruling on de facto parentage.

No. 38129-3-III,
*In re Parentage of M.F.*

Standing

We first address Carmen Fowler's challenge to the court commissioner ruling granting Erin and Kevin Linhart an evidentiary hearing on their petition for de facto parentage. We liken the court commissioner's initial threshold ruling to a denial of a summary judgment motion, which denial this court does not review after a trial on the evidence. *Leitner v. City of Tacoma*, 15 Wn. App. 2d 1, 18, 476 P.3d 618 (2020), *review denied*, 196 Wn.2d 1045, 481 P.3d 553 (2021). Thus, we decline to address assignments of error surrounding the threshold determination, although we analyze further the appealability of the court commissioner's standing decision and rulings attendant to the decision.

A party may appeal from a final judgment entered in any action or proceeding. RAP 2.2(a)(1). A final judgment resolves the merits of a party's legal claims. *Denney v. City of Richland*, 195 Wn.2d 649, 654, 462 P.3d 842 (2020). In other words, a final judgment is "'a judgment . . . that eliminates the litigation between the parties on the merits and leaves nothing for the inferior court to do in case of an affirmance except to execute the judgment.'" *In re Personal Restraint of Skylstad*, 160 Wn.2d 944, 949, 162 P.3d 413 (2007) (alteration in original) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 851 (2002).

In a de facto parentage proceeding, a trial court's affirmative ruling on the threshold issue of standing does not eliminate litigation between the parties. A finding of

9

standing permits further proceedings rather than ending them. *See In re Estate of Jones*, 170 Wn. App. 594, 605, 287 P.3d 610 (2012). In contrast, a trial court's denial of standing would constitute a final judgment terminating the litigation between the parties.

Analysis of appealability does not end merely because the court commissioner's grant of standing does not constitute a final judgment. This court may review nonfinal trial court orders or rulings if (1) the order or ruling prejudicially affects the decision designated in the notice, and (2) the order is entered, or the ruling is made, before the appellate court accepts review. RAP 2.4(b).

Given the nature of de facto parentage proceedings, a grant of standing should rarely prejudice a trial court's final determination. A threshold ruling on standing relies on the initial petition for de facto parentage.

> [W]hether a petitioner is entitled to a full adjudication proceeding "is a different question than whether the petitioner should *ultimately* be adjudicated a de facto parent." To establish standing, a petitioner must only *allege* sufficient facts to satisfy the statutory requirement. To prevail on the petition, the petitioner must *demonstrate* in a subsequent proceeding that the statutory requirements have been proved.

*In re Parentage of L.J.M.*, 15 Wn. App. 2d 588, 595-96, 476 P.3d 636 (2020) (quoting *In re Parentage of J.D.W.*, 14 Wn. App. 2d 388, 423, 471 P.3d 228 (2020)).

RCW 26.26A.440(3)(c) imposes the same factors for review regardless of whether the superior court or its court commissioner renders a threshold standing determination or grants or denies the petition for de facto parentage after a full hearing. Nevertheless, the

10

superior court bases the final ruling on an evidentiary hearing, not on the petition. In this case, the superior court's final judgment made no reference to the initial ruling on standing. Thus, the initial ruling granting standing did not prejudice the final judgment.

We decline to address Carmen Fowler's challenge to the court commissioner's evidentiary rulings and contention that the commissioner improperly took judicial notice of other court proceedings concerning custody of Mark. Since the superior court, when analyzing de facto parentage, reviewed most of the same factors attendant to standing, we also decline to address Fowler's complaint that the superior court did not decide her motion for revision until the end of the evidentiary hearing.

## De Facto Parentage

Carmen Fowler challenges the trial court's grant of de facto parentage to Kevin Linhart. Fowler limits her challenge to Kevin's parentage status because of Erin Linhart's recent death. Fowler complains that the superior court erred by evaluating Erin and Kevin Linhart collectively to determine de facto parentage. Fowler emphasizes that Erin and Kevin maintained different relationships with Mark, and, in the superior court's collective findings, the court principally relied on Mark's relationship with Erin. Fowler highlights the superior court's mention of Erin Linhart being the godmother.

The opening and closing subsections of RCW 26.26A.440 declare:

> (1) A proceeding to establish parentage of a child under this section may be commenced only by an *individual* who:
> (a) Is alive when the proceeding is commenced; and

11

(b) Claims to be a de facto parent of the child.
. . . .
(4) In a proceeding to adjudicate parentage of an individual who claims to be a de facto parent of the child, the court shall *adjudicate the individual* who claims to be a de facto parent to be a parent of the child if the *individual* demonstrates by a preponderance of the evidence that:
(a) The *individual* resided with the child as a regular member of the child's household for a significant period;
(b) The *individual* engaged in consistent caretaking of the child;
(c) The *individual* undertook full and permanent responsibilities of a parent of the child without expectation of financial compensation;
(d) The *individual* held out the child as the individual's child;
(e) The *individual* established a bonded and dependent relationship with the child which is parental in nature;
(f) Another parent of the child fostered or supported the bonded and dependent relationship required under (e) of this subsection; and
(g) Continuing the relationship between the *individual* and the child is in the best interest of the child.

(Emphasis added.) Carmen Fowler underscores the use of the word "individual" throughout this controlling statute, and she contends the statute requires each petitioning parent to establish de facto parentage on his or her own. According to Fowler, the evidence did not independently establish Kevin to have fulfilled the requirements of de facto parentage under the controlling statute. In response, Kevin Linhart posits that Fowler reads the statute too literally and narrowly.

We discern no need to decide whether each petitioner, when two spouses petition together, must establish the elements of RCW 26.26A.440. Erin Linhart has died, which death significantly alters the circumstances under which Mark resides in the Linhart household. We agree with Carmen Fowler that the superior court's ruling favoring the

12

Linharts focuses more on the relationship between Mark and Erin Linhart than Kevin. For this reason, we remand to the superior court to enter findings of fact specific to Kevin Linhart and whether he independently fulfills the elements of RCW 26.26A.440(4).

Because we anticipate some of the arguments being forwarded on this appeal to be faced by the superior court on remand, we address those arguments.

Carmen Fowler maintains that Erin and Kevin Linhart knew their caretaking responsibilities were not permanent because they filed a de facto parentage petition to make such responsibilities permanent. We reject this hyperliteral argument. If we adopted this contention, no de facto parentage petition could ever succeed.

Carmen Fowler argues that a de facto parent should live in the same household as a legal parent for a significant period of time. We agree that living in the same household as a legal parent suggests that "parental responsibilities are permanent, rather than temporary or transitory." *In re Parentage of L.J.M.*, 15 Wn. App. 2d 588, 599 (2020). We disagree that cohabitation with a legal parent is the only means of satisfying this element.

Carmen Fowler argues the only evidence that Kevin Linhart engaged in caretaking of Mark is evidence that Linhart did "boy stuff" with him including football and go-karting. Fowler quotes a passage of testimony by Kevin, wherein he mentions Mark enjoys sports and Mark becomes more attached to him than Erin when he wishes to play. Fowler argues that playing is not a function specific to parenting. We disagree. Linhart

13

engaged in a caretaking function when he played with Mark. *In Re Parentage of J.D.W.*, 14 Wn. App. 2d 388, 418-19 (2020).

Carmen Fowler challenges the superior court's implied conclusion that, because she deposited Mark with her mother Robin Brown during the time that she abused substances, Fowler impliedly consented to Brown's fostering of a parenting relationship between Mark and the Linharts. We agree that, based on the language of RCW 26.26A.440(4)(f), Kevin Linhart must show that Fowler, not Brown, fostered Kevin's relationship with Mark. All parties acknowledge that Brown had nonparental custody of Mark.

Kevin Linhart argues that, because Mark's father was absent, the trial court could have based the de facto parentage finding on the father's fostering and support of the relationship. This court has held that a parent who consents to a caretaking arrangement may then by inaction foster a continuing parent-like relationship. *Walker v. Riley*, 19 Wn. App. 2d 592, 606, 498 P.3d 33 (2021). We do not wish to extend this holding to a scenario in which a parent is totally absent from a child's life and plays no part in any decision making. For element (f) to possess teeth, it must require some meaningful connection between an existing parent and de facto parent.

Attorney Fees and Sanctions

Both parties request attorney fees on appeal on the theory that the other party advances frivolous arguments or misstates the record. We conclude that each party

14

advanced important and legitimate contentions. We deny each party an award of reasonable attorney fees and costs.

CONCLUSION

We remand for the superior court to readdress the factors found in RCW 26.26A.440(4) based on altered conditions resulting from the death of Erin Linhart. The superior court, at its discretion, may permit additional testimony from the parties and their witnesses.

A majority of this panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Pennell, J.